**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| SHERIDAN HOLDING COMPANY II, LLC, *et al.*,[1] | § Case No. 19-35198 (MI) |
| | § |
| Debtors. | § (Joint Administration Requested) |
| | § |
| | § Re: Docket No. __ |

**ORDER (I) SCHEDULING A COMBINED
DISCLOSURE STATEMENT APPROVAL AND
PLAN CONFIRMATION HEARING, (II) CONDITIONALLY
APPROVING THE DISCLOSURE STATEMENT, (III) ESTABLISHING
A PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE
AND RELATED PROCEDURES, (IV) APPROVING THE SOLICITATION
PROCEDURES, (V) APPROVING THE COMBINED NOTICE, AND
(VI) WAIVING THE REQUIREMENTS THAT THE U.S. TRUSTEE CONVENE
A MEETING OF CREDITORS AND THE DEBTORS FILE SCHEDULES AND SOFAS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) scheduling the Combined Hearing; (b) conditionally approving the Disclosure Statement; (c) establishing a the Objection Deadline and approving related procedures; (d) approving the Solicitation Procedures; (e) approving the form and manner of the Combined Notice; (f) conditionally (i) directing that the U.S. Trustee not convene a meeting of creditors (the "Creditors' Meeting") under section 341(e) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), provided

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

that the Plan is confirmed within seventy-five (75) days of the Petition Date, and (ii) waiving the requirement that the Debtors file statements of financial affairs and schedules of assets and liabilities, provided that the Plan is confirmed within seventy-five (75) days of the Petition Date; and (g) allowing the notice period for the Disclosure Statement and Combined Hearing to run simultaneously, each as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is permissible pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on October 17, 2019, at [__]:[__] [_].m., prevailing Central Time.

3.      The Disclosure Statement is conditionally approved and its use in the Debtors prepetition solicitation of acceptances of the Plan is approved.

4.      Any objections to adequacy of the Disclosure Statement and confirmation of the Plan shall be filed on or before October 15, 2019, at 4:00 p.m., prevailing Central Time.

5.      Any brief in support of confirmation of the Plan and reply to any objections shall be filed on or before October 16, 2019, at 4:00 p.m., prevailing Central Time.

6.      Any objections to the Disclosure Statement or confirmation of the Plan must:

a.      be in writing;

b.      comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules;

c.      state the name and address of the objecting party and the amount and nature of the claim or interest beneficially owned by such entity;

d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

7.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

8.      The form of the Combined Notice, substantially in the form attached hereto as **Exhibit 1**, the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and the Opt-Out Form, substantially in the form attached hereto as **Exhibit 3**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved.

9.      The Opt-Out Deadline is approved.

10.     The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in the *New York Times* and the *Houston Chronicle* within five business days following entry of this Order, or as soon as reasonably practicable thereafter, and to make

reasonable payments required for such publication.  The Publication Notice, together with the Combined Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

11.     The Voting Record Date and the Voting Deadline are approved.

12.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements under the Securities Act, and any exemptions from registration under Blue Sky requirements and are approved.

13.     The Ballot, substantially in the form attached hereto as **Exhibit 4**, is approved.

14.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballot are approved.

15.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims that are unimpaired under, and conclusively presumed to accept, the Plan or Holders of Claims that do not receive or retain any property under, and conclusively presumed to reject, the Plan.

16.     The U.S. Trustee need not and shall not convene a meeting of creditors or equity Holders pursuant to section 341(e) of the Bankruptcy Code unless the Plan is not confirmed on or before November 29, 2019, without prejudice to the Debtors' right to request further extension thereof.

17.     Cause exists to extend the time by which the Debtors must file the Schedules and SOFAs until November 29, 2019, without prejudice to the Debtors' rights to request further extensions thereof.

18.     Notwithstanding the relief granted in this Order, nothing in this Order, or any action taken in accordance herewith, shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

21.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

22.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019
Houston, Texas

_____
MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | § §  Chapter 11 |
| | § |
| SHERIDAN HOLDING COMPANY II, LLC, *et al.*,[1] | §  Case No. 19-35198 (MI) |
| | § |
| Debtors. | §  (Joint Administration Requested) |
| | § |

**NOTICE OF (I) COMMENCEMENT OF
PREPACKAGED CHAPTER 11 BANKRUPTCY CASES,
(II) HEARING ON THE DISCLOSURE STATEMENT,
CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS, AND (III) OBJECTION DEADLINES,
AND SUMMARY OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

On September 15, 2019 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at https://cases.primeclerk.com/SheridanII.[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms

The Plan is a "prepackaged" plan of reorganization. The primary purpose of the Plan is to implement an equitization of the vast majority of the Debtors' secured and unsecured debt, or, in the alternative, an asset sale restructuring. The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs, and, ultimately, would jeopardize recoveries for holders of allowed claims.

#### Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement

A hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will be held before Marvin Isgur, United States Bankruptcy Judge, in Room 404 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on [October 17], 2019, at [●], to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court. Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

#### Information Regarding the Plan

**Voting Record Date**. The voting record date was **August 13, 2019**, which was the date used for determining which Holders of Claims in Classes 3a, 3b, 3c, 4a, 4b, 4c, 5a, 5b, and 5c were entitled to vote on the Plan.

**Objections to the Plan**. The deadline for filing objections to the Plan is **[October 15], 2019, at 4:00 p.m., prevailing Central Time**. Any objections (each, an "Objection") to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; and (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections.

---

herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

<u>**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**</u>

<u>**ARTICLE IX**</u> **OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND** <u>**ARTICLE IX.D CONTAINS A THIRD-PARTY RELEASE**</u>**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

<u>**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**</u>

Objections must be filed with the Court and served so as to be **actually received** no later than **October 15, 2019, at 4:00 p.m., prevailing Central Time**, by those parties who have filed a notice of appearance in the Debtors' chapter 11 cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **Sheridan Holding Company II, LLC**<br>1360 Post Oak Blvd., Suite 2500<br>Houston, Texas 77056<br>Attn:   Cheryl S. Phillips |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:   Joshua A. Sussberg, P.C. and<br>Steven N. Serajeddini<br><br>-and -<br><br>**Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:   Spencer Winters<br><br>-and-<br><br>**Jackson Walker L.L.P.**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attn:   Matthew D. Cavenaugh |

**United States Trustee**          **Office of the United States Trustee**
                                   **for the Southern District of Texas**
                                   515 Rusk Street, Suite 3516
                                   Houston, Texas 77002
                                   Attn:   Trial Attorney

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE COURT.**

**AS DESCRIBED BELOW, YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Summary of Plan Treatment

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| SUMMARY OF EXPECTED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[3][4] | Estimated % Recovery Under Plan[5] |
| 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor (subject to the reasonable consent of the Required Consenting Secured Lenders), and subject to any applicable intercreditor agreement:  (i) payment in full in Cash of its Allowed Class 1 Claim; (ii) the collateral securing its Allowed Class 1 Claim; (iii) Reinstatement of its Allowed | N/A | 100% |

---

[3]   The estimated total of Allowed Claims for Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) assumes a reduction on account of each class's pro-rata share of Allowed Roll-Up DIP Claims (as defined in the Plan).

[4]   The estimated total of Allowed Claims for Classes 3(a), 3(b), 3(c), 4(a), 4(b), 4(c), 5(a), 5(b), and 5(c) includes the principal amount outstanding plus estimated accrued and unpaid interest as of September 13, 2019.

[5]   The projected recoveries assume the Allowed Claims for Classes 3(a), 3(b), 3(c), 4(a), 4(b), and 4(c) are reduced by an amount of the Allowed Roll-Up DIP Claims based on each such class's pro-rata share of total secured debt.

| | | | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
|---|---|---|---|---|
| **Class** | **Claim/Interest** | **Treatment of Claim/ Interest** | | |
| | | Class 1 Claim; or (iv) such other treatment rendering its Allowed Class 1 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | | |
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive Cash in an amount equal to such Allowed Class 2 Claim. | N/A | 100% |
| 3(a) | SIP II RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)     if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)     if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $52,790,346 | 55.8% |
| 3(b) | SPP II-A RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)     if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)     if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $7,343,547 | 55.8% |

**SUMMARY OF EXPECTED RECOVERIES**

| | SUMMARY OF EXPECTED RECOVERIES | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
| 3(c) | SPP II-M RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-M RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)　　if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)　　if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $2,738,730 | 55.8% |
| 4(a) | SIP II Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)　　if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)　　if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $438,825,970 | 55.8% |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
| 4(b) | SPP II-A Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)      if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)      if the Asset Sale Restructuring occurs, on the Effective Date, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $61,043,840 | 55.8% |
| 4(c) | SPP II-M Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-M Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:<br><br>(i)      if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or<br><br>(ii)      if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. | $22,766,017 | 55.8% |
| 5(a) | SIP II Subordinated Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II Subordinated Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated | $415,998,880 | 2.6% |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
| | | Term Loan Claims) of:<br><br>(i)      if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or<br><br>(ii)     if the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery;<br><br>*provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(a). | | |
| 5(b) | SPP II-A Subordinated Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A Subordinated Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated Term Loan Claims) of:<br><br>(i)      if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or<br><br>(ii)     if the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery;<br><br>*provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(b). | $57,868,455 | 2.6% |
| 5(c) | SPP II-M Subordinated Term Loan | On the Effective Date, each Holder of Allowed SPP II-M Subordinated Term Loan Credit Agreement Claims shall | $21,581,763 | 2.6% |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
| | Credit Agreement Claims | receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated Term Loan Claims) of:<br><br>(i)      if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or<br><br>(ii)      if the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery;<br><br>*provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(c). | | |
| 6 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive either: (i) Reinstatement of such Allowed General Unsecured Claim pursuant to section 1124 of the Bankruptcy Code; or (ii) payment in full in Cash on (a) the Effective Date, or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim. | $9,116,319 | 100% |
| 7 | Intercompany Claims | Intercompany Claims shall be, at the option of the Reorganized Debtors, either:  (i) Reinstated; or (ii) cancelled and released without any distribution on account of such Claims. | N/A | 0% / 100% |
| 8 | Intercompany Interests | Intercompany Interests shall be, at the option of the Reorganized Debtors, either: (a) Reinstated; or (b) cancelled and released without any distribution | N/A | 0% / 100% |

| SUMMARY OF EXPECTED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Amount of Claims[34] | Estimated % Recovery Under Plan[5] |
| | | on account of such Interests. | | |
| 9 | Interests | If the Equitization Restructuring occurs, all Interests will be cancelled, released, and extinguished and will be of no further force or effect, and Holders of Interests will not receive any distribution on account of such Interests.<br><br>If the Asset Sale Restructuring occurs, on the Effective Date, each Holder of Interests shall receive, in full and final satisfaction of such Interests, its Pro Rata share of the Interest Holder Sale Recovery. | N/A | 0% |

## **Discharge, Injunctions, Exculpation, and Releases**

Please be advised that the Plan contains certain release, exculpation, and injunction provisions as follows:

### **Relevant Definitions**

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) each Consenting Stakeholder; (c) any official committees appointed in the Chapter 11 Cases and each of their respective members; and (d) each current and former Affiliate of each Entity in clause (a) through the following clause (e); and (e) each Related Party of each Entity in clause (a) through this clause (e).

"**Released Party**" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each Company Party; (e) each Sheridan II Revolving Lender; (f) each Sheridan II Term Lender; (g) each DIP Lender; (h) Manager; (i) each Manager Affiliate; (j) each Agent; (k) all Holders of Interests; (l) each Exit Facility Lender; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

10

"**Releasing Parties**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each Company Party; (e) each Sheridan II Revolving Lender; (f) each Sheridan II Term Lender; (g) each Sheridan II Subordinated Term Lender; (h) Manager; (i) each Manager Affiliate; (j) each Agent; (k) all Holders of Claims; (l) all Holders of Interests; (m) each DIP Lender; (n) each Exit Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

### A. *Discharge of Claims and Termination of Interests.*

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.**

### B. *Release of Liens.*

**Except as otherwise provided in the Exit Facility Documents, the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with** Error! Reference

source not found. **hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C. *Releases by the Debtors*.

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the DIP Credit Agreement, or the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance**

or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D. *Releases by Holders of Claims and Interests*.

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the

administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.  *Exculpation*.

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or

gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F. *Injunction*.

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Houston, Texas
September 15, 2019

/s/ *Matthew D. Cavenaugh*

Matthew D. Cavenaugh (TX Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit 2

**Proposed Publication Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | §   Chapter 11 |
| | § |
| SHERIDAN HOLDING COMPANY II, LLC, *et al.*,[1] | §   Case No. 19-35198 (MI) |
| | § |
| Debtors. | §   (Joint Administration Requested) |
| | § |

## NOTICE OF COMMENCEMENT OF PREPACKAGED CHAPTER 11 BANKRUPTCY CASES AND HEARING ON THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN

**TO:**    **ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

       **PLEASE TAKE NOTICE THAT** on September 15, 2019 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at https://cases.primeclerk.com/SheridanII.[2]

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before Marvin Isgur, United States Bankruptcy Judge, in Room 404 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on October 17, 2019, at [●], to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Court.  Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the of the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity or individual; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court (contemporaneously with a proof of service) and served so as to be **actually received** no later than **[October 15], 2019, at 4:00 p.m., prevailing Central Time**, by those parties who have a filed a notice of appearance in the Debtors' chapter 11 cases as well as each of the following parties:

| | |
|---|---|
| **Debtors** | **Sheridan Holding Company II, LLC**<br>1360 Post Oak Blvd.<br>Suite 2500<br>Houston, Texas 77056<br>Attn:   Cheryl S. Phillips |
| **Proposed Counsel to the Debtors** | **Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:   Joshua A. Sussberg, P.C. and<br>Steven N. Serajeddini<br><br>-and -<br><br>**Kirkland & Ellis LLP**<br>**Kirkland & Ellis International LLP**<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Attn:   Spencer Winters<br><br>-and-<br><br>**Jackson Walker L.L.P.**<br>1401 McKinney Street, Suite 1900<br>Houston, Texas 77010<br>Attn:   Matthew D. Cavenaugh |

2

| | |
|---|---|
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Southern District of Texas**<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn:   Trial Attorney |

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE IX.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**ARTICLE IX** OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE IX.D CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

3

## **Exhibit 3**

**Notice of Non-Voting Status and Opportunity to Opt Out**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SHERIDAN HOLDING COMPANY II, LLC, *et al.*,[1] | § § § § | **IMPORTANT:** No chapter 11 case has been commenced as of the date of distribution of this notice. |
| | § | |
| Debtors. | § § | |

## NOTICE OF (I) NON-VOTING STATUS TO HOLDERS OR POTENTIAL HOLDERS OF UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN AND HOLDERS OR POTENTIAL HOLDERS OF IMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO REJECT THE PLAN, AND (II) OPPORTUNITY FOR HOLDERS OF CLAIMS AND INTERESTS TO OPT OUT OF THE THIRD-PARTY RELEASES

**PLEASE TAKE NOTICE THAT** on September 15, 2019 (the "Petition Date"), Sheridan Holding Company II, LLC and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Court") the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and a related disclosure statement [Docket No. [●]] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection on the Court's website at www.txs.uscourts.gov or free of charge on the Debtors' restructuring website at https://cases.primeclerk.com/SheridanII.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488). The location of the Debtors' service address is: 1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and Disclosure Statement and do not purport to be precise or complete statements of all the terms and

**PLEASE TAKE FURTHER NOTICE THAT** you are a Holder or potential Holder of a Claim against or Interest in the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, *is not entitled to vote on the Plan*.  Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or a Holder of a Claim in a Class that is Impaired under the Plan and, therefore, conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, is *not* entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents at no additional cost**, you should contact Prime Clerk LLC, the Debtors' proposed solicitation agent in the chapter 11 cases (the "Claims and Noticing Agent"), by: (a) visiting the Debtors' restructuring website at: https://cases.primeclerk.com/SheridanII; (b) writing to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; (c) emailing sheridanballots@PrimeClerk.com; and/or (d) calling the Debtors' restructuring hotline at 844-232-0772 (domestic toll-free) or 917-942-6394 (international toll).

Following the commencement of the Chapter 11 Cases, all pleadings filed in the cases (i) may be inspected at the office of the Clerk of the Bankruptcy Court for the Southern District of Texas, P.O. Box 61010, Houston, Texas 77208 and (ii) will also be available through the Court's electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov), or on the website maintained by the Claims and Noticing Agent at https://cases.primeclerk.com/SheridanII.

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE IX.D CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"):**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors),**

---

provisions of the Plan or documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or Disclosure Statement, the Plan or Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Third-Party Release under the Plan:

"**Released Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each Company Party; (e) each Sheridan II Revolving Lender; (f) each Sheridan II Term Lender; (g) each DIP Lender; (h) Manager; (i) each Manager Affiliate; (j) each Agent; (k) all Holders of Interests; (l) each Exit Facility Lender; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n); *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

"**Releasing Parties**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Consenting Stakeholder; (d) each Company Party; (e) each Sheridan II Revolving Lender; (f) each Sheridan II Term Lender; (g) each Sheridan II Subordinated Term Lender; (h) Manager; (i) each Manager Affiliate; (j) each Agent; (k) all Holders of Claims; (l) all Holders of Interests; (m) each DIP Lender; (n) each Exit Facility Lender; (o) each current and former Affiliate of each Entity in clause (a) through the following clause (p); and (p) each Related Party of each Entity in clause (a) through this clause (p); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article IX.D of the Plan; or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in Article IX.D of the Plan that is not resolved before Confirmation; *provided*, *further*, that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

\*        \*        \*

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE RELEASES, EXCULPATION, INJUNCTION, AND THIRD-PARTY RELEASES PROVIDED IN THE PLAN.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

Houston, Texas
September 15, 2019

/s/ Matthew D. Cavenaugh

Matthew D. Cavenaugh (TX Bar No. 24062656)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:     (713) 752-4200
Facsimile:      (713) 752-4221
Email:           mcavenaugh@jw.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Steven N. Serajeddini (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                    steven.serajeddini@kirkland.com

-and-

Spencer A. Winters (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           spencer.winters@kirkland.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

**OPTIONAL: RELEASE OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Debtors' Joint Prepackaged Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out or files an objection to the Third-Party Release with the Court on or before the Plan Objection Deadline.

**If you believe you are a Holder of a Claim or Interest with respect to Sheridan Holding Company II, LLC or its Debtor affiliates and choose to opt out of the Third-Party Release set forth in Article IX.D of the Plan, you may submit your election to opt-out through one of the following methods: (i) completing, signing, and returning the Opt-Out Form promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165, or (ii) completing, signing, and returning the Opt-Out Form via the E-Ballot portal located at https://cases.primeclerk.com/SheridanII.**

**<u>Use of Hard Copy Opt-Out Form</u>.**

To ensure that your hard copy Opt-Out Form is counted clearly sign and return your Opt-Out Form in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to Sheridan Holding Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165.

**THIS OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") BY OCTOBER 15, 2019, AT 4:00 P.M. PREVAILING CENTRAL TIME (THE "<u>OPT-OUT DEADLINE</u>"). IF THE OPT-OUT FORM IS RECEIVED AFTER THE OPT-OUT DEADLINE, IT WILL NOT BE COUNTED.**

**<u>Item 1</u>.        Amount of Claim.**

The undersigned hereby certifies that, as of August 13, 2019 (the "<u>Voting Record Date</u>"), the undersigned was the Holder of either (a) Class 1 Other Secured Claims, (b) Class 2 Other Priority Claims, (c) Class 6 General Unsecured Claims, or (d) Class 9 Interests in the following aggregate amount (insert amount in box below):

| |
|---|
| Class 1 Other Secured Claims Amount $ _____ |
| OR |
| Class 2 Other Priority Claims Amount $ _____ |
| OR |
| Class 6 General Unsecured Claims Amount $ _____ |
| OR |
| Class 9 Interests _____ Shares |

**<u>Item 2</u>.        Important information regarding the Third-Party Release.**

**Article IX.D of the Plan contains the following Third-Party Release:**

> **Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors'**

**in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN "***RELEASED PARTY***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH COMPANY PARTY; (E) EACH SHERIDAN II REVOLVING LENDER; (F) EACH SHERIDAN II TERM LENDER; (G) EACH DIP LENDER; (H) MANAGER; (I) EACH MANAGER AFFILIATE; (J) EACH AGENT; (K) ALL HOLDERS OF INTERESTS; (L) EACH EXIT FACILITY LENDER; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (N); AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (N); *PROVIDED* THAT IN EACH CASE, AN

ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASED PARTY IN THE CONFIRMATION ORDER.

UNDER THE PLAN "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH COMPANY PARTY; (E) EACH SHERIDAN II REVOLVING LENDER; (F) EACH SHERIDAN II TERM LENDER; (G) EACH SHERIDAN II SUBORDINATED TERM LENDER; (H) MANAGER; (I) EACH MANAGER AFFILIATE; (J) EACH AGENT; (K) ALL HOLDERS OF CLAIMS; (L) ALL HOLDERS OF INTERESTS; (M) EACH DIP LENDER; (N) EACH EXIT FACILITY LENDER; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (P); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (P); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASING PARTY IN THE CONFIRMATION ORDER.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE IX.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) FILE AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐ **By checking this box, you elect to opt _out_ of the Third-Party Releases.**

### USE OF E-BALLOT OPT-OUT FORM

**You may submit your Opt-Out Form by electronic, online transmission solely through the E-Balloting Portal found on the Debtors' case information website (https://cases.primeclerk.com/SheridanII) and following the directions set forth on the E-Balloting Portal regarding submitting your Opt-Out Form as described more fully below.**

1. **Please visit https://cases.primeclerk.com/SheridanII.**

2. **Click on the "E-Ballot" section of the Debtors' website.**

3. **Follow the directions to submit your Opt-Out Form.  If you choose to submit your Opt-Out Form via the E-Balloting Portal, you should <u>not</u> return a hard copy of your Opt-Out Form.**

**IMPORTANT NOTE: YOU WILL NEED THE FOLLOWING INFORMATION TO RETRIEVE AND SUBMIT YOUR CUSTOMIZED OPT-OUT FORM:**

**UNIQUE E-BALLOT ID#**_____

**"E-BALLOTING" IS THE SOLE MANNER IN WHICH OPT-OUT FORMS MAY BE DELIVERED VIA ELECTRONIC TRANSMISSION.**

**OPT-OUT FORMS SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE COUNTED.**

**Item 3.Certifications.**

By signing this paper Opt-Out Form, the undersigned certifies:

(a) that, as of the Voting Record Date, either:  (i) the Entity is the Holder of the Claim or Interests set forth in Item 1; or (ii) the Entity is an authorized signatory for an Entity that is a Holder of the Claim or Interests set forth in Item 1;

(b) that the Holder has received a copy of the *Notice of (I) Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and Holders or Potential Holders of Impaired Claims Conclusively Presumed to Reject the Plan, and (II) Opportunity for Holders of Claims and Interests to Opt Out of the Third-Party Releases* and that this Opt-Out Form is submitted pursuant to the terms and conditions set forth therein;

(c) that the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class set forth in Item 1; and

(d) that no other Opt-Out Form with respect to the amount(s) of Claims or Interests identified in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |
| | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA FIRST CLASS MAIL (OR IN THE REPLY ENVELOPE PROVIDED), OVERNIGHT COURIER OR HAND DELIVERY TO:**

**Sheridan Holding Ballot Processing**
**c/o Prime Clerk LLC**
**One Grand Central Place**
**60 East 42nd Street, Suite 1440**
**New York, NY 10165**

## <u>Exhibit 4</u>

**Form of Ballot**

## BALLOT FOR VOTING ON
## THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN[1]

| | |
|---|---|
| **IMPORTANT NOTE**: | PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT (THE "BALLOT") AND THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN (AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN") OF SHERIDAN HOLDING COMPANY II, LLC, ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN, WHICH IS SUBJECT TO COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF. |
| **DEADLINE**: | THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY PRIME CLERK LLC (THE "CLAIMS AND NOTICING AGENT") PRIOR TO 5:00 P.M. PREVAILING CENTRAL TIME ON SEPTEMBER 11, 2019 (THE "VOTING DEADLINE"). |
| **QUESTIONS**: | If you have any questions regarding this Ballot, the enclosed voting instructions, the procedures for voting, or need to obtain additional solicitation materials, please contact the Claims and Noticing Agent by emailing sheridanballots@primeclerk.com and reference "Sheridan" in the subject line or at 844-232-0772 (domestic toll-free) or 917-942-6394 (international toll). |

---

[1] The anticipated Debtors in the chapter 11 cases, along with the last four digits of each anticipated Debtor's federal tax identification number, include:  Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488).  The location of the anticipated Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

1

**NOTICE**:

You have received this Ballot because the Company's books and records indicate that you are a Holder of an Allowed Claim[2] in Class(es) 3(a), 3(b), 3(c), 4(a), 4(b), 4(c), 5(a), 5(b), and/or 5(c) (each a "<u>Voting Class</u>" and collectively the "<u>Voting Classes</u>") as of August 13, 2019 (the "<u>Voting Record Date</u>") and as set forth in Item 1 of the Ballot. Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of those Claims.

This Ballot may not be used for any purpose other than for casting votes with respect to the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent immediately.

You should review the Plan before you vote. You may wish to seek legal advice concerning the proposals related to the Plan.

**TRANSACTION BACKGROUND:**

The Company is soliciting votes to accept or reject the Plan from Holders of Sheridan II RBL Claims, Sheridan II Term Loan Claims, and Sheridan II Subordinated Term Loan Claims. The Company may file for protection under Chapter 11 of the Bankruptcy Code in a bankruptcy court of competent jurisdiction (the "<u>Court</u>") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan. The Company will file the Plan and the related disclosure statement (as amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>") with the Court. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims in that Voting Class votes to accept the Plan. The Court may confirm the Plan, which contemplates effecting the Restructuring Transactions, if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code, and the Plan then would be binding on all Holders of Allowed Claims in the Voting Classes, among others.

**TREATMENT OF YOUR CLAIMS**:

Subject to the terms and conditions of the Plan, you will receive the treatment identified in **<u>Exhibit A</u>**.

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

---

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

**VOTING — COMPLETE THIS SECTION**

| ITEM 1:<br>PRINCIPAL<br>AMOUNT<br>OF<br>CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Claims in the Voting Classes as set forth below (your "Claims").  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for each Voting Class in order to have your vote in that particular Voting Class counted.<br><br>Please note that you are voting all of your Claims in each particular Voting Class either to accept or reject the Plan.  You may not split your vote in any particular Voting Class.  If you do not indicate that you either accept or reject the Plan in each particular Voting Class by checking the applicable box(es) below, your vote in that particular Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for a particular Voting Class by checking both boxes below, your vote in that particular Voting Class will not be counted.<br><br>The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.<br><br>The Holder of the Claims in the Voting Classes set forth below votes to (*please check one and only one box per applicable Voting Claim*): |
| --- | --- |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
| --- | --- | --- | --- |
| **Classes 3(a), 3(b), and 3(c) (Sheridan II RBL Claims)** | | | |
| Class 3(a) | SIP II RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 3(b) | SPP II-A RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 3(c) | SPP II-M RBL Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| **Classes 4(a), 4(b), and 4(c) (Sheridan II Term Loan Claims)** | | | |
| Class 4(a) | SIP II Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4(b) | SPP II-A Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 4(c) | SPP II-M Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| **Classes 5(a), 5(b), and 5(c) (Sheridan II Subordinated Term Loan Claims)** | | | |
| Class 5(a) | SIP II Subordinated Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

| Voting Class | Description | Amount | Vote to Accept or Reject Plan |
|---|---|---|---|
| Class 5(b) | SPP II-A Subordinated Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |
| Class 5(c) | SPP II-M Subordinated Term Loan Credit Agreement Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br>☐ REJECT (VOTE AGAINST) THE PLAN |

**ITEM 2:**
**RELEASE**
**INFORMATION**

Article IX.D of the Plan provides for a third-party release (the "<u>Third-Party Release</u>"):

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE EFFECTIVE DATE, IN EXCHANGE FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH RELEASED PARTY IS, AND IS DEEMED TO BE, HEREBY CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED BY EACH RELEASING PARTY FROM ANY AND ALL CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, MATURED OR UNMATURED, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, CONTRACT, TORT, OR OTHERWISE, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS (INCLUDING THE CAPITAL STRUCTURE, MANAGEMENT, OWNERSHIP, OR OPERATION THEREOF), THE DEBTORS' IN- OR OUT-OF-COURT RESTRUCTURING EFFORTS, ANY AVOIDANCE ACTIONS (BUT EXCLUDING AVOIDANCE ACTIONS BROUGHT AS COUNTERCLAIMS OR DEFENSES TO CLAIMS ASSERTED AGAINST THE DEBTORS), INTERCOMPANY TRANSACTIONS BETWEEN OR AMONG A COMPANY PARTY AND ANOTHER COMPANY PARTY, THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE RSA, THE DISCLOSURE STATEMENT, THE DIP CREDIT AGREEMENT, THE EXIT FACILITIES, THE PLAN (INCLUDING, FOR THE AVOIDANCE OF DOUBT, THE PLAN SUPPLEMENT), OR ANY RESTRUCTURING TRANSACTION, CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT (INCLUDING ANY LEGAL OPINION REQUESTED BY ANY ENTITY REGARDING ANY TRANSACTION, CONTRACT, INSTRUMENT, DOCUMENT OR OTHER AGREEMENT CONTEMPLATED BY THE PLAN OR THE RELIANCE BY ANY RELEASED PARTY ON THE PLAN OR THE CONFIRMATION ORDER IN LIEU OF SUCH LEGAL OPINION) RELATING TO ANY OF THE FOREGOING, CREATED OR ENTERED INTO IN CONNECTION WITH THE RSA, THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, BEFORE OR DURING THE CHAPTER 11 CASES, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER RELATED ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE RELATED OR RELATING TO ANY OF THE FOREGOING TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE RELEASES SET

**FORTH ABOVE DO NOT RELEASE (I) ANY PARTY OF ANY OBLIGATIONS RELATED TO CUSTOMARY BANKING PRODUCTS, BANKING SERVICES OR OTHER FINANCIAL ACCOMMODATIONS (EXCEPT AS MAY BE EXPRESSLY AMENDED OR MODIFIED BY THE PLAN AND THE EXIT FACILITY CREDIT AGREEMENTS, OR ANY OTHER FINANCING DOCUMENT UNDER AND AS DEFINED THEREIN) OR (II) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, THE CONFIRMATION ORDER, ANY RESTRUCTURING TRANSACTION, OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN, INCLUDING THE EXIT FACILITY DOCUMENTS, OR ANY CLAIM OR OBLIGATION ARISING UNDER THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD-PARTY RELEASE IS: (A) CONSENSUAL; (B) ESSENTIAL TO THE CONFIRMATION OF THE PLAN; (C) GIVEN IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (D) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (E) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; (F) FAIR, EQUITABLE, AND REASONABLE; (G) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (H) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

**IMPORTANT INFORMATION REGARDING THE THIRD-PARTY RELEASE:**

**UNDER THE PLAN, "RELEASING PARTIES" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH CONSENTING STAKEHOLDER; (D) EACH COMPANY PARTY; (E) EACH SHERIDAN II REVOLVING LENDER; (F) EACH SHERIDAN II TERM LENDER; (G) EACH SHERIDAN II SUBORDINATED TERM LENDER; (H) MANAGER; (I) EACH MANAGER AFFILIATE; (J) EACH AGENT; (K) ALL HOLDERS OF CLAIMS; (L) ALL HOLDERS OF INTERESTS; (M) EACH DIP LENDER; (N) EACH EXIT FACILITY LENDER; (O) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH THE FOLLOWING CLAUSE (P); AND (P) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH THIS CLAUSE (P); *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN; OR (Y) TIMELY FILES WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN**

6

**OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION; *PROVIDED*, *FURTHER*, THAT ANY SUCH ENTITY SHALL BE IDENTIFIED BY NAME AS A NON-RELEASING PARTY IN THE CONFIRMATION ORDER.**

**AS A "RELEASING PARTY" UNDER THE PLAN, YOU ARE DEEMED TO PROVIDE THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN, AS SET FORTH ABOVE. YOU MAY ELECT NOT TO GRANT THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN <u>ONLY IF</u> YOU (A) CHECK THE BOX BELOW OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE IX.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION. THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION. BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE IX.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE IX OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

<u>**The Holder of the Claims identified in Item 1 elects to:**</u>

| ☐ **<u>OPT OUT of the Third-Party Release</u>** |
|---|

**ITEM 3:**
**CERTIFICATION, BALLOT COMPLETION, AND DELIVERY INSTRUCTIONS**

By signing this Ballot, the undersigned certifies to the Court and the Debtors:

(a) that, as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claims in the Voting Classes as set forth in Item 1; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Classes as set forth in Item 1;

(b) that the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) that the undersigned has cast the same vote with respect to all Claims in each particular Voting Class; and

(d) that no other Ballots with respect to the Claims in the Voting Classes identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other
than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS BALLOT AND RETURN IT PROMPTLY.  THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT PRIOR TO THE VOTING DEADLINE.**

**YOU MAY SUBMIT YOUR BALLOT VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND-DELIVERY TO THE FOLLOWING ADDRESS:**

**Sheridan Holding Ballot Processing,
C/O Prime Clerk LLC,
One Grand Central Place,
60 East 42nd Street,
Suite 1440, New York, NY 10165**

**OR**

**YOU MAY SUBMIT YOUR BALLOT ELECTRONICALLY BY SCANNING A SIGNED COPY OF YOUR BALLOT AND E-MAILING YOUR SCANNED BALLOT TO THE FOLLOWING E-MAIL ADDRESS:**

sheridanballots@primeclerk.com

**PLEASE DIRECT ALL VOTING QUESTIONS TO THE CLAIMS AND NOTICING AGENT BY E-MAILING SHERIDANBALLOTS@PRIMECLERK.COM OR CALLING 844-232-0772 (DOMESTIC, TOLL-FREE) OR 917-942-6394 (INTERNATIONAL, TOLL)**

**Important Information Regarding Releases under the Plan**:

The Plan includes the following release provisions:[1]

**Article IX.C: Releases by the Debtors**

**Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative claims, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the DIP Credit Agreement, or the Plan, the Plan Supplement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's**

---

[1]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this Ballot.

finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

### Article IX.D: Releases by Holders of Claims and Interests

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Company Party and another Company Party, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the RSA, the Disclosure Statement, the DIP Credit Agreement, the Exit Facilities, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, before or during the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence related or relating to any of the foregoing taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any party of any obligations related to customary banking products, banking services or other financial accommodations (except as may be expressly amended or modified by the Plan and the Exit Facility Credit Agreements, or any other financing document under and as defined therein) or (ii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit Facility Documents, or any Claim or obligation arising under the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made

after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

## Article IX.E: Exculpation

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the RSA and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

The Exculpated Parties and other parties set forth above have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

## Article IX.F: Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts,

11

**has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

[Remainder of page intentionally left blank]

**INSTRUCTIONS FOR COMPLETING THIS BALLOT:**

1. This Ballot contains voting options with respect to the Plan.

2. To ensure that your vote is counted, this Ballot must be properly completed, executed, and delivered by (if applicable) (a) using the enclosed pre-paid, pre-addressed return envelope, (b) via first class mail, overnight courier, or hand delivery to Sheridan Ballot Processing c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165, or (c) via e-mail to sheridanballots@primeclerk.com, so that this Ballot is actually received by the Claims and Noticing Agent on or before the Voting Deadline, 5:00 p.m. prevailing Central Time on September 11, 2019.

3. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan or is improperly signed and returned will <u>NOT</u> be counted unless the Company otherwise determines.

4. To vote, you <u>MUST</u> deliver your completed Ballot (whether via E-Ballot or Paper Ballot) so that it is <u>ACTUALLY RECEIVED</u> by the Claims and Noticing Agent on or before the Voting Deadline by one of the methods described above. The Voting Deadline is 5:00 p.m. prevailing Central Time on September 11, 2019.

5. Any Ballot received by the Claims and Noticing Agent after the Voting Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Company otherwise determines. No Ballot may be withdrawn or modified after the Voting Deadline without the Company's prior consent.

6. Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives your paper Ballot or e-mail attaching a scanned PDF copy of your executed Ballot. In all cases, you should allow sufficient time to assure timely delivery.

7. If you deliver multiple Ballots to the Claims and Noticing Agent, <u>ONLY</u> the last properly executed Ballot timely received will be deemed to reflect your intent and will supersede and revoke any prior Ballot(s).

8. You must vote all of your Claims in each particular Voting Class either to accept or reject the Plan and may not split your vote. Further, if a Holder has multiple Claims in each of the Voting Classes, the Company may direct the Claims and Noticing Agent to aggregate those Claims for the purpose of counting votes.

9. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest, or an assertion or admission of a Claim or an Interest, in the Company's chapter 11 cases.

10. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated in the Disclosure Statement, and the Plan.

11. <u>SIGN AND DATE</u> your Ballot.[1]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature included on an e-mailed Ballot will be deemed immediately legally valid and effective.

12. If your Claim is held in multiple accounts, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, complete and return each Ballot you receive.

## <u>PLEASE DELIVER YOUR BALLOT PROMPTLY</u>!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY EMAILING SHERIDANBALLOTS@PRIMECLERK.COM AND REFERENCE "SHERIDAN" IN THE SUBJECT LINE, OR BY CALLING 844-232-0772 (DOMESTIC, TOLL-FREE) OR 917-942-6394 (INTERNATIONAL, TOLL)**

---

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Company, the Company's proposed counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

**Exhibit A**

Subject to the terms and conditions of the Plan, you will receive the following treatment if the Plan is consummated:

| | | |
|---|---|---|
| Class 3(a) | SIP II RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 3(b) | SPP II-A RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 3(c) | SPP II-M RBL Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-M RBL Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 4(a) | SIP II Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 4(b) | SPP II-A Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 4(c) | SPP II-M Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-M Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Secured Lender Claim Amount) of:  (i) if the Equitization Restructuring occurs, (A) Tranche C of the Last-Out Exit Facility and (B) the Secured Lender Common Stock Pool; or (ii) if the Asset Sale Restructuring occurs, the Sale Proceeds up to the Allowed amount of such Claims, less the Junior Stakeholder Sale Recovery. |
| Class 5(a) | SIP II Subordinated Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SIP II Subordinated Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated Term Loan Claims) of:  (i) if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or (ii) if the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery; *provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(a). |

| Class 5(b) | SPP II-A Subordinated Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-A Subordinated Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated Term Loan Claims) of: (i) if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or (ii) ifp the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery; *provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(b). |
| --- | --- | --- |
| Class 5(c) | SPP II-M Subordinated Term Loan Credit Agreement Claims | On the Effective Date, each Holder of Allowed SPP II-M Subordinated Term Loan Credit Agreement Claims shall receive, in full and final satisfaction of such Claims, its ratable share (measured by reference to the Allowed amount of Sheridan II Subordinated Term Loan Claims) of: (i) if the Equitization Restructuring occurs, the Junior Stakeholder Equitization Recovery; or (ii) if the Asset Sale Restructuring occurs, the Junior Stakeholder Sale Recovery; *provided*, *however*, that each Applicable Affiliate is conclusively deemed to have waived its ratable share of the recovery set forth herein for the benefit of the other Holders of Claims in Class 5(c). |

**For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**