

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| SHERIDAN HOLDING COMPANY II, LLC, *et al.*,[1] | § | Case No. 19-35198 (MI) |
| | § | |
| Debtors. | § § | (Jointly Administered) |
| | § | Re: Docket No. 6 |

**AMENDED FINAL ORDER (A) AUTHORIZING THE DEBTORS**
**TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING**
**THE DEBTORS TO USE CASH COLLATERAL, (C) GRANTING**
**LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE**
**EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO**
**THE PREPETITION SECURED PARTIES, (E) MODIFYING THE**
**AUTOMATIC STAY, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "**DIP Motion**") of Sheridan Investment Partners II, L.P., Sheridan

Production Partners II-A, L.P., Sheridan Production Partners II-M, L.P., and Sheridan Holding

Company II, LLC (the "**DIP Borrowers**"), Sheridan Investment Partners II GP, LLC, Sheridan

Production Partners II, LLC, SPP II-B GP, LLC, and SPP II-M GP, LLC (the "**DIP**

**Guarantors**" and, together with the DIP Borrowers, the "**DIP Loan Parties**"), and each of the

DIP Loan Parties' affiliates that are debtors and debtors in possession (collectively, the

"**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**") and pursuant to sections 105,

361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c), 507 and 552 of

title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sheridan Holding Company II, LLC (7040); Sheridan Investment Partners II GP, LLC (8298); Sheridan Investment Partners II, L.P. (9405); Sheridan Production Partners II, LLC (8034); Sheridan Production Partners II-A, L.P. (8813); Sheridan Production Partners II-B, L.P. (9232); Sheridan Production Partners II-M, L.P. (9084); SPP II-B GP, LLC (8554); and SPP II-M GP, LLC (0488).  The location of the Debtors' service address is:  1360 Post Oak Blvd., Suite 2500, Houston, Texas 77056.

2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of Texas (the "**Local Rules**") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of a proposed final order (the "**Final Order**") among other things:

    (i)    authorizing the DIP Borrowers to obtain postpetition financing ("**DIP Financing**") under a senior secured, superpriority, priming debtor-in-possession credit facility (the "**DIP Facility**" and the loans incurred thereunder, the "**DIP Loans**") pursuant to the terms and conditions of that certain Senior Secured Superpriority Debtor-in-Possession Term Loan Agreement (as may be amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**") consisting of (A) new money term loans (the "**DIP New Money Loans**") in an aggregate principal amount of $50,000,000, and (B) roll-up term loans ("**DIP Roll-Up Loans**") in an aggregate principal amount of $50,000,000, for a total aggregate principal amount of $100,000,000 (the "**Total DIP Commitment**"), solely on the terms and conditions set forth in the DIP Credit Agreement, by and among the DIP Borrowers, as borrowers, the DIP Guarantors, as guarantors, the several banks and other financial institutions or entities from time to time party thereto, as lenders (collectively, the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), and Bank of America, N.A., as administrative and collateral agent (in such capacities, and together with its successors and permitted assigns, the "**DIP Agent**");

    (ii)    authorizing the DIP Guarantors to guarantee on a senior secured superpriority basis the DIP Loans and the other DIP Obligations (as defined herein);

    (iii)    authorizing the DIP Loan Parties to execute and deliver the DIP Credit Agreement and other documentation, including credit agreements, security agreements, pledge agreements, control agreements, mortgages, guarantees, promissory notes, certificates, instruments, notes, and such other documentation which may be necessary or required to implement the DIP Facility and perform thereunder and/or that may be reasonably requested by the DIP Agent, in each case, as amended, restated, supplemented, waived and/or otherwise modified from time to time in accordance with the terms thereof and hereof (collectively, together with

the DIP Credit Agreement, the "**DIP Documents**"), and to perform such other and further acts as may be necessary, desirable or appropriate in connection therewith;

(iv)     approving all loans, advances, extensions of credit, financial accommodations, reimbursement obligations, fees (including, without limitation, commitment fees, administrative agency fees, costs, expenses and other liabilities), all other obligations (including indemnities and similar obligations, whether contingent or absolute) and all other amounts due or payable under the DIP Documents, (collectively, the "**DIP Obligations**");

(v)     granting to the DIP Agent for the benefit of the DIP Lenders allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all DIP Obligations, and valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code, in each case, on all prepetition and postpetition property of the DIP Loan Parties' estates (other than certain excluded property that includes, for the avoidance of doubt, any property of Sheridan Production Partners II-B, L.P. ("**II-B**"), as provided herein or in the DIP Documents (the "**Excluded Assets**")) and all proceeds thereof, including, any Avoidance Actions Proceeds (as defined herein), in each case subject to the Carve Out (as defined herein);

(vi)     authorizing the DIP Loan Parties to use the DIP Roll-Up Loans to refinance and discharge dollar-for-dollar Prepetition Secured Debt held by the DIP Lenders in the aggregate amount of the DIP New Money Loans (as defined herein);

(vii)     authorizing the Debtors to use proceeds of the DIP Facility, solely in accordance with the Interim Order (as defined herein), this Final Order and the DIP Documents;

(viii)     authorizing the DIP Loan Parties to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents;

(ix)     authorizing the Debtors to use the Prepetition Collateral (as defined herein), subject to and pursuant to the terms and conditions set forth in this Final Order;

(x)     authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties (as defined herein) pursuant to sections 361 and 363(e) of the Bankruptcy Code for any diminution in value of any of their interests in property of the Debtors' estates including the Prepetition Collateral (as

defined herein) from and after the Petition Date as a condition to the Debtors' use of Prepetition Collateral securing the obligations under:

(A)     the Senior Secured Term Loan Credit Agreement, dated as of December 16, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**II-A Term Loan Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the II-A Term Loan Agreement, collectively, the "**II-A Term Loan Documents**") by and among Sheridan Production Partners II-A, L.P., as borrower (in such capacity, the "**II-A Borrower**"), Bank of America, N.A., as administrative and collateral agent (the "**II-A Term Loan Agent**") and the lenders party thereto (the "**II-A Term Loan Lenders**" and, together with the II-A Term Loan Agent, the "**II-A Term Loan Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required II-A Term Loan Lenders**");

(B)     the Senior Secured Term Loan Credit Agreement, dated as of December 16, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**II-M Term Loan Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the II-M Term Loan Agreement, collectively, the "**II-M Term Loan Documents**") by and among Sheridan Production Partners II-M, L.P., as borrower (in such capacity, the "**II-M Borrower**"), Bank of America, N.A., as administrative and collateral agent (the "**II-M Term Loan Agent**") and the lenders party thereto (the "**II-M Term Loan Lenders**" and, together with the II-M Term Loan Agent, the "**II-M Term Loan Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required II-M Term Loan Lenders**");

(C)     the Senior Secured Term Loan Credit Agreement, dated as of December 16, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**SIP-II Term Loan Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the SIP-II Term Loan Agreement, collectively, the "**SIP Term Loan Documents**") (the SIP-II Term Loan Agreement, collectively with the II-A Term Loan Agreement and the II-M Term Loan Agreement, the "**Term Loan Agreements**") by and among Sheridan Investment Partners II, L.P., as borrower (in such capacity, the "**SIP-II Borrower**" and, collectively with the II-A Borrower and the II-M Borrower, the "**Prepetition Borrowers**" and, collectively with Sheridan Holding Company I, LLC and the pledgor parties party to the SIP Term Loan Documents (the "**Term Loan Pledgors**"), the

"**Prepetition Obligors**"), Bank of America, N.A., as administrative and collateral agent (the "**SIP-II Term Loan Agent**" and, collectively with the II-A Term Loan Agent and the II-M Term Loan Agent, the "**Term Loan Agents**") and the lenders party thereto (the "**SIP-II Term Loan Lenders**" and, together with the SIP-II Term Loan Agent, the "**SIP-II Term Loan Secured Parties**") (the SIP-II Term Loan Lenders, collectively with the II-A Term Loan Lenders and the II-M Term Loan Lenders, the "**Term Loan Lenders**" and, collectively with the Term Loan Agents, the "**Term Loan Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required SIP-II Term Loan Lenders**" and, collectively with the Required II-A Term Loan Lenders and Required II-M Term Loan Lenders, the "**Required Term Loan Lenders**");

(D)     the Amended and Restated Credit Agreement, dated as of February 26, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**II-A RBL Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the II-A RBL Agreement, collectively, the "**II-A RBL Documents**") by and among the II-A Borrower, as borrower, Bank of America, N.A., as administrative and collateral agent (the "**II-A RBL Agent**") and the lenders party thereto (the "**II-A RBL Lenders**" and, together with the II-A RBL Agent, the "**II-A RBL Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required II-A RBL Lenders**");

(E)     the Amended and Restated Credit Agreement, dated as of February 26, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**II-M RBL Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the II-M RBL Agreement, collectively, the "**II-M RBL Documents**") by and among the II-M Borrower, as borrower, Bank of America, N.A., as administrative and collateral agent (the "**II-M RBL Agent**") and the lenders party thereto (the "**II-M RBL Lenders**" and, together with the II-M RBL Agent, the "**II-M RBL Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required II-M RBL Lenders**");

(F)     the Amended and Restated Credit Agreement, dated as of February 26, 2013 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the commencement of the Chapter 11 Cases, the "**SIP-II RBL Agreement**") (together with all related agreements and documents executed by any of the Debtors in connection with the SIP-II RBL Agreement, collectively, the "**SIP-II RBL Documents**") (the SIP-II RBL Agreement, collectively

with the II-A RBL Agreement and the II-M RBL Agreement, the "**RBL Agreements**" and, together with the Term Loan Agreements, the "**Prepetition Debt Documents**") (the pledgor parties party to the SIP-II RBL Documents, together with the Term Loan Pledgors, the "**Prepetition Pledgors**") by and among the SIP-II Borrower, as borrower, Bank of America, N.A., as administrative and collateral agent (the "**SIP-II RBL Agent**" and, collectively with the II-A RBL Agent and the II-M RBL Agent, the "**RBL Agents**" and, collectively with the Term Loan Agents, the "**Prepetition Agents**") and the lenders party thereto (the "**SIP-II RBL Lenders**" and, together with the SIP-II RBL Agent, the "**SIP-II RBL Secured Parties**") (the SIP-II RBL Lenders, collectively with the II-A RBL Lenders and the II-M RBL Lenders, the "**RBL Lenders**" and, collectively with the RBL Agents, the "**RBL Secured Parties**" and, collectively with the Term Loan Secured Parties, the "**Prepetition Secured Parties**") (the Required Lenders as defined therein referred to herein as the "**Required SIP-II RBL Lenders**" and, collectively with the Required II-A RBL Lenders and Required II-M RBL Lenders, the "**Required RBL Lenders**");

(xi)     subject only to the Carve Out (as defined herein) authorizing the Debtors to waive: (a) the Debtors' right to surcharge pursuant to section 506(c) of the Bankruptcy Code the DIP Collateral, the Prepetition Collateral or the Adequate Protection Collateral and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(xii)    waiving the equitable doctrine of "marshaling" and other, similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (b) with respect to any of the Prepetition Collateral and the Adequate Protection Collateral (as defined herein) (including the Cash Collateral) for the benefit of any party other than the Prepetition Secured Parties;

(xiii)   approving certain stipulations and releases by the Debtors with respect to the Prepetition Debt Documents and the liens and security interests arising therefrom, subject to certain limited challenge rights;

(xiv)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "**Automatic Stay**") to the extent set forth herein to the extent necessary to permit the Debtors and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the Interim Order, the DIP Documents and this Final Order and to deliver any notices of termination described below and as further set forth herein;

(xv)     waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Final Order; and

<blockquote>
(xvi) authorizing that during the period commencing on the date of this Court's entry of this Final Order and ending on the earlier of (a) the date on which the right to use Cash Collateral terminates under the terms of this Final Order, and (b) the Effective Date (as defined in the Debtors' chapter 11 plan (the "**Plan**")), the Debtors be authorized to continue using the Cash Collateral.
</blockquote>

The Court having considered the DIP Motion and exhibits attached thereto, the *Declaration of Lisa A. Stewart in Support of the Debtors' First Day Motions* (the "**First Day Declaration**"), the *Declaration of Jeremy Matican in Support of the Debtors' Motion Seeking Authorization to Obtain Postpetition Financing and Use Cash Collateral* (the "**Initial DIP Declaration**"), the DIP Documents, and the evidence submitted and arguments made by the Debtors at the interim hearing held on September 16, 2019 (the "**Interim Hearing**"); and the Court having entered the Interim Order; and the Court having scheduled the Final Hearing on the DIP Motion to be held before this Court on October 17, 2019 at 2:30 p.m. (prevailing Central Time) (the "**Final Hearing**") to consider entry of this Final Order; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(b), (c) and (d) and all applicable Local Rules; and the Final Hearing having been canceled due to the absence of any timely objection; and all objections, if any, to the final relief requested in the DIP Motion, and all reservations of rights included therein, having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the Final relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors and their estates and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.      *Petition Date*.  On September 15, 2019 (the "**Petition Date**") each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  On September 15, 2019, this Court entered an order approving the joint administration of the Chapter 11 Cases.

B.      *Debtors in Possession*.  The Debtors have continued in the management and operation of their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      *Interim Order*.  On September 16, 2019, this Court entered the Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing, (B) Authorizing the Debtors to Use Cash Collateral, (C) Granting Liens and Providing Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Secured Parties, (E) Scheduling a Final Hearing, (F) Modifying the Automatic Stay, and (G) Granting Related Relief (the "**Interim Order**").

D.      *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding pursuant to 28

---

[2]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    *Committee Formation*. As of the date hereof, no official committee of unsecured creditors under Section 1102 of the Bankruptcy Code (the "**Committee**") or any other statutory committee has been appointed in the Chapter 11 Cases.

F.    *Notice*. Proper, timely, adequate and sufficient notice of the DIP Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Complex Case Rules, and no other or further notice of the DIP Motion or the entry of this Final Order shall be required.

G.    *Cash Collateral*. As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash except for cash that is an Excluded Asset, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the Prepetition Secured Parties and DIP Parties within the meaning of section 363(a) of the Bankruptcy Code.

H.    *Debtor's Stipulations*. Subject to the limitations thereon contained in paragraphs 29 and 30 below, the Debtors admit, stipulate and agree that:

   (i)    *Prepetition II-A Term Loan Obligations*. As of the Petition Date: the II-A Borrower was justly and lawfully indebted and liable to the II-A Term Loan Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $63,438,010.99 in respect of loans made to the II-A Borrower pursuant to, and in accordance with, the terms of the II-A Term Loan Documents, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the II-A Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the II-A Term Loan Documents (collectively, the "**II-A Term Loan Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the II-A Term Loan Obligations.

(ii)     *Prepetition II-M Term Loan Obligations.*  As of the Petition Date: the II-M Borrower was justly and lawfully indebted and liable to the II-M Term Loan Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $23,658,912.80 in respect of loans made to the II-M Borrower pursuant to, and in accordance with, the terms of the II-M Term Loan Documents, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the II-M Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the II-M Term Loan Documents (collectively, the "**II-M Term Loan Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the II-M Term Loan Obligations.

(iii)     *Prepetition SIP-II Term Loan Obligations.*  As of the Petition Date: the SIP-II Borrower was justly and lawfully indebted and liable to the SIP-II Term Loan Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $456,036,949.73 in respect of loans made to the SIP-II Borrower pursuant to, and in accordance with, the terms of the SIP-II Term Loan Documents, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the SIP-II Term Loan Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the SIP-II Term Loan Documents (collectively, the "**SIP-II Term Loan Obligations**" and, collectively with the II-A Term Loan Obligations and II-M Term Loan Obligations, the "**Prepetition Term Loan Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the SIP-II Term Loan Obligations.

(iv)     *Prepetition II-A RBL Obligations.*  As of the Petition Date: the II-A Borrower was justly and lawfully indebted and liable to the II-A RBL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $7,709,122.44 in respect of loans made to the II-A Borrower pursuant to, and in accordance with, the terms of the II-A RBL Documents, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the II-A RBL Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the II-A RBL Documents (collectively, the "**II-A RBL Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of the II-A RBL Obligations.

(v)     *Prepetition II-M RBL Obligations*.   As of the Petition Date: the II-M Borrower was justly and lawfully indebted and liable to the II-M RBL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $2,875,069.24 in respect of loans made to the II-M Borrower pursuant to, and in accordance with, the terms of the II-M RBL Documents, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the II-M RBL Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the II-M RBL Documents (collectively, the "**II-M RBL Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the II-M RBL Obligations.

(vi)    *Prepetition SIP-II RBL Obligations*.   As of the Petition Date: the SIP-II Borrower was justly and lawfully indebted and liable to the SIP-II RBL Secured Parties, without defense, counterclaim, recoupment or offset of any kind, in the aggregate principal amount of not less than $55,418,345.61 in respect of loans made to the SIP-II Borrower pursuant to, and in accordance with, the terms of the SIP-II Term RBL, plus, in each case, accrued and unpaid interest thereon and fees, expenses (including, without limitation, any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the SIP-II RBL Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the SIP-II RBL Documents (collectively, the "**SIP-II RBL Obligations**" and, collectively with the II-A Term Loan Obligations, II-M Term Loan Obligations, SIP-II Term Loan Obligations, II-A RBL Obligations and II-M RBL Obligations, the "**Prepetition Obligations**"), whether or not evidenced by any note, agreement, or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the SIP-II RBL Obligations.

(vii)   *II-A Term Loan Liens and Collateral*.   The II-A Term Loan Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**II-A Term Loan Secured Parties Prepetition Liens**") the Collateral (as defined in the II-A Term Loan Documents and hereinafter referred to as the "**II-A Term Loan Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any II-A Term Loan Collateral in accordance with the terms of the II-A Term Loan Documents.

(viii)  *II-M Term Loan Liens and Collateral*.   The II-M Term Loan Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**II-M Term Loan Secured Parties Prepetition Liens**") the Collateral (as defined in the II-M Term Loan Documents and hereinafter referred to as the "**II-M Term Loan Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any II-M Term Loan Collateral in accordance with the terms of the II-M Term Loan Documents.

(ix)     *SIP-II Term Loan Liens and Collateral*.   The SIP-II Term Loan Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**SIP-II Term Loan Secured Parties Prepetition Liens**") the Collateral (as defined in the SIP-II Term Loan Documents and hereinafter referred to as the "**SIP-II Term Loan Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any SIP-II Term Loan Collateral in accordance with the terms of the SIP-II Term Loan Documents.

(x)     *II-A RBL Liens and Collateral*.   The II-A RBL Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**II-A RBL Secured Parties Prepetition Liens**") the Collateral (as defined in the II-A RBL Documents and hereinafter referred to as the "**II-A RBL Collateral**" and, together with the II-A Term Loan Collateral, the "**II-A Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any II-A RBL Collateral in accordance with the terms of the II-A RBL Documents.

(xi)     *II-M RBL Liens and Collateral*.   The II-M RBL Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**II-M RBL Secured Parties Prepetition Liens**") the Collateral (as defined in the II-M RBL Documents and hereinafter referred to as the "**II-M RBL Collateral**" and, together with the II-M Term Loan Collateral, the "**II-M Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any II-M RBL Collateral in accordance with the terms of the II-M RBL Documents.

(xii)     *SIP-II RBL Liens and Collateral*.   The SIP-II RBL Obligations are secured by first priority, senior security interests in and liens on (collectively, the "**SIP-II RBL Secured Parties Prepetition Liens**" and, collectively with the II-A Term Loan Secured Parties Prepetition Liens, II-M Term Loan Secured Parties Prepetition Liens, SIP-II Term Loan Secured Parties Prepetition Liens, II-A RBL Secured Parties Prepetition Liens, and II-M RBL Secured Parties Prepetition Liens, the "**Prepetition Liens**") the Collateral (as defined in the SIP-II RBL Documents and hereinafter referred to as the "**SIP-II RBL Collateral**" and, together with the SIP-II Term Loan Collateral, the "**SIP-II Collateral**") (the II-A Collateral, II-M Collateral, and SIP-II Collateral are collectively referred to herein as the "**Prepetition Collateral**"), including any identifiable cash proceeds from the sale, lease, conveyance, or other disposition of any SIP-II RBL Collateral in accordance with the terms of the SIP-II RBL Documents.

(xiii)     *Intercreditor Agreements*.   Pursuant to that certain Amended Intercreditor Agreement, dated as of December 16, 2013, by and among the II-A RBL Agent, II-A Term Loan Agent, and the II-A Borrower, in each case in its respective capacity as such (as amended, restated, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "**II-A Intercreditor Agreement**"), that certain Amended Intercreditor Agreement, dated as of December 16, 2013, by and among the II-M RBL Agent, II-M Term Loan Agent, and the II-M Borrower, in each case in its respective capacity as such (as amended, restated, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto,

the "**II-M Intercreditor Agreement**"), and that certain Amended Intercreditor Agreement, dated as of December 16, 2013, by and among the SIP-II RBL Agent, SIP-II Term Loan Agent, and the SIP-II Borrower, in each case in its respective capacity as such (as amended, restated, supplemented or otherwise modified from time to time prior to the commencement of these Chapter 11 Cases and with all supplements and exhibits thereto, the "**SIP-II Intercreditor Agreement**" and, collectively with II-A Intercreditor Agreement and the II-M Intercreditor Agreement, the "**Intercreditor Agreements**") and as more particularly stated therein, each Prepetition Lien is *pari passu* and equal in priority with respect to all Prepetition Collateral.

(xiv)    *Validity of Prepetition Obligations*.  The Prepetition Obligations constitute legal, valid, and binding obligations of the respective Prepetition Obligors.  No offsets, recoupments, defenses, or counterclaims to the Prepetition Obligations exist.  No portion of the Prepetition Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Debt Documents prior to the Petition Date is subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.  The Prepetition Debt Documents are valid and enforceable by the applicable Prepetition Secured Parties and Prepetition Agents, for the benefit of the Prepetition Secured Parties against each of the respective Prepetition Obligors party thereto.  The Prepetition Obligations constitute allowed claims against the applicable Prepetition Obligors' estates.  No claim of or cause of action held by the Debtors or their estates exists against any of the Prepetition Secured Parties or their agents (in such capacity), whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Debt Documents (or the transactions contemplated thereunder), Prepetition Obligations, or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.

(xv)    *Validity, Perfection and Priority of Prepetition Liens*.  The Prepetition Liens (a) secure the applicable Prepetition Obligations, (b) are valid, binding, non-avoidable, properly perfected, and enforceable liens on and security interests in the Prepetition Collateral, (c) were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value, and (d) are senior in priority over any and all other liens on the Prepetition Collateral and subject and subordinate only to (1) the Carve Out (as defined herein) and (2) valid, properly perfected, and unavoidable liens permitted under the Prepetition Debt Documents, but only to the extent that such liens are permitted by the Prepetition Debt Documents to be senior to the Prepetition Liens (the "**Permitted Liens**" and each, a "**Permitted Lien**"). No portion of the Prepetition Liens are subject, pursuant to the Bankruptcy Code or other applicable law, to any contest, avoidance, disallowance, disgorgement, impairment, reduction, recharacterization, recovery, subordination (whether equitable, contractual or

otherwise), attachment, offset, recoupment, counterclaim, cross-claim, defense, objection, "claim" (as defined in the Bankruptcy Code) of any kind, cause of action, impairment, or any other challenge of any kind.

(xvi)   *No Claims or Causes of Action*.   No claim of or cause of action held by the Debtors or their estates exists against any of the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code or applicable state law equivalents), or whether arising under or in connection with any of the Prepetition Debt Documents (or the transactions contemplated thereunder), Prepetition Obligations, or Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery.   Each of the Debtors and their estates irrevocably waives, for itself and its subsidiaries and affiliates, any right to challenge or contest in any way the perfection, validation, priority or enforceability of the Prepetition Liens or the validity or enforceability of the Prepetition Obligations and the Prepetition Debt Documents.

(xvii)   *Initial Budget*.   The Initial Budget (as defined herein) is reasonable under the facts and circumstances.

I.       *Findings Regarding the DIP Financing and Use of Cash Collateral.*

(i)       Good and sufficient cause has been shown for the immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) and authorization for the DIP Loan Parties to obtain financing pursuant to the DIP Facility.

(ii)       The Debtors have a critical need to continue to use Prepetition Collateral and Cash Collateral and for the DIP Loan Parties to obtain the DIP Financing in order to permit, among other things, the orderly continuation of the operation of the Debtors' businesses, to maintain business relationships with contract counterparties, vendors, suppliers and customers, to make payroll, to make capital expenditures, satisfy other working capital and operational needs and fund expenses of these chapter 11 cases.   The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence by the DIP Loan Parties of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the

preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(iii)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Loan Parties granting to the DIP Secured Parties, subject to the Carve Out, the DIP Liens and the DIP Superpriority Claims (as defined herein) and, subject to the Carve Out, granting and incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(iv)      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitute Prepetition Collateral under the Prepetition Debt Documents (as applicable).  The property described in the preceding sentence as it relates to the Prepetition Collateral constitutes Prepetition Collateral that is subject to the Prepetition Secured Parties' security interests.

(v)      The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds and profits in their business operations that constitute Cash Collateral of the Prepetition Agents under section 363(a) of the Bankruptcy Code.  Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in the DIP Loan Parties' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.  The property described in the two preceding sentences as it relates to the Prepetition Collateral constitutes Cash Collateral of the Prepetition Agents.

(vi) Based on the DIP Motion, the First Day Declaration, the Initial DIP Declaration, and the record presented to the Court at the Interim Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations (as defined herein), the terms on which the Debtors may continue to use the Prepetition Collateral pursuant to this Final Order and the DIP Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration and represent the best financing presently available.

(vii) The Prepetition Agents on behalf of the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral exclusively on and subject to the terms and conditions set forth herein and for the limited duration of such use provided for herein.

(viii) To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed under the applicable Prepetition Debt Documents to have consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the DIP Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Final Order and the DIP Documents.

(ix) The DIP Financing, as well as the terms of the Adequate Protection Obligations and the Adequate Protection Liens (as defined herein), and the use of the Prepetition Collateral (and Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: all DIP Loans made to and guarantees issued by the DIP Loan Parties pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their respective affiliates in good

16

faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(x)    None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt Documents or this Final Order (including by permitting the Debtors to use the Cash Collateral or in taking any other actions permitted by this Final Order), and none of the Prepetition Secured Parties or Prepetition Agents (a) has liability to any third party or shall be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, is used in the Internal Revenue Code, the Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal or state statute) or (b) owes any fiduciary duty to any of the Debtors, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.

(xi)    The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the DIP Loan Parties' continued use of the Prepetition Collateral to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of Adequate

Protection Liens (as defined herein)), in accordance with the terms hereof. The Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xii)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Based on the DIP Motion and on the record presented to the Court, the terms of the proposed adequate protection provided to the Prepetition Secured Parties in this Final Order for any diminution in the value of the Prepetition Secured Parties' interests in property of the Debtors' estates including the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, the imposition of the Automatic Stay pursuant to section 362(a) of the Bankruptcy Code, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Prepetition Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code. The adequate protection provided herein and other benefits and privileges contained herein are necessary in order to (a) protect the Prepetition Secured Parties from the diminution of their respective interests in the value of property of the Debtors' estates including the Prepetition Collateral and (b) obtain the foregoing consents and agreements.

(xiii)    Nothing in this Final Order shall (a) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (c) prejudice, limit

or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(xiv)    Subject to the Carve Out, (a) each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (b) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

(xv)    Consummation of the DIP Financing and the use of Prepetition Collateral, in accordance with this Final Order and the DIP Documents are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted*.  The relief requested in the DIP Motion is granted on a final basis in accordance with the terms and conditions set forth in the DIP Documents and this Final Order.  Any objections to the DIP Motion with respect to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  Except as specifically amended, supplemented, or otherwise modified by this Final Order, all provisions of the Interim Order, including but not limited to, findings of fact, conclusions of law, and authorizations made by this Court, remain in full force and effect and are hereby ratified by this Final Order and incorporated herein by reference as though set forth fully below.

2.      *Authorization of the DIP Financing and the DIP Documents*.

(a)      In addition to the authority granted in the Interim Order, the DIP Loan Parties are hereby authorized to borrow money pursuant to the DIP Credit Agreement, and the DIP Guarantors are hereby authorized to guaranty the DIP Loan Parties' DIP Obligations with respect to such borrowings, in each case up to an aggregate new money principal amount equal to $50,000,000 together with applicable interest, protective advances, expenses, fees and other charges payable in connection with the DIP Facility, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, to provide working capital for the DIP Loan Parties and to pay interest, fees and expenses in accordance with this Final Order and the DIP Documents.

(b)      In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party is authorized and directed to perform all acts, to make, execute and deliver all instruments, certificates, registrations and agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages, deeds of trust, control agreements and financing statements), and to pay all fees in connection with or that may be reasonably required, necessary or desirable for the DIP Loan Parties to implement the terms of, performance of their obligations under or effectuate the purposes of and transactions contemplated by this Final Order or the DIP Financing (to the extent such acts, execution and delivery were authorized by the Interim Order and have already occurred, such acts are hereby ratified), including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)      the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the DIP Loan Parties,

the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement) (the "**Required DIP Lenders**") may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (or to and of any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii)     the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees, expenses and other amounts payable under the DIP Documents which fees, expenses and other amounts are irrevocable and are, and are deemed to have been, approved by this Final Order, whether or not such fees, expenses and amounts arose before or after the Petition Date and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Documents (and in any separate letter agreements between any or all DIP Loan Parties, on the one hand, and any of the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders (including Davis Polk & Wardwell LLP, Vinson & Elkins LLP, Houlihan Lokey, Inc. and such other advisors as permitted under the DIP Documents), in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; *provided*, *however*, that nothing herein or in the DIP Documents shall limit the rights of any party in interest to seek payment of any fees and expenses in accordance with the Plan (as defined in the DIP Documents); *provided further*, that the approval of fees payable under this paragraph shall be subject to the requirements for payments of such fees as outlined in paragraph 16 of this Final Order; and

(iv)     the performance of all other acts necessary, appropriate or desirable under or in connection with the DIP Documents, including the incurrence, granting and perfecting of the DIP Liens and DIP Superpriority Claims.

2. *Roll-Up Loans.* A dollar amount of the Prepetition Secured Debt equal to the dollar amount of the commitments in respect of the DIP New Money Term Loans in effect on the Closing Date of the DIP Facility shall immediately, automatically and irrevocably be deemed to have been converted into DIP Roll-Up Loans and shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Final Order and the DIP Documents, in each case subject to the terms and conditions set forth in the Final Order and the DIP Documents.

3. *DIP Obligations.* The DIP Documents constitute valid, binding and non-avoidable obligations of the DIP Loan Parties party thereto, fully enforceable against each DIP Loan Party and its estate in accordance with the terms of the DIP Documents and this Final Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). The DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the DIP Loan Parties or the other Credit Parties to the DIP Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Final Order, including all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents. The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the occurrence of an Event of Default (as defined herein), except as provided in paragraph 30 herein. No obligation, payment, transfer, or grant of collateral or security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens (as defined herein),

and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.      No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any DIP Loan Party's use of the DIP Financing, and each DIP Lender and the DIP Agent may rely upon each DIP Loan Party's representations that the amount of DIP Financing requested at any time and the use thereof, are in accordance with the requirements of this Final Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

5.      *Carve Out*.

(a)     As used in this Final Order, the "**Carve Out**" means the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee appointed in the Debtors' Chapter 11 Cases under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below), (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve Out Trigger

23

Notice, and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3,000,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**"). Any use of Cash Collateral to make payments to Professional Persons shall be deemed, to the extent of such payments, to be a diminution in the value of the interests of the Prepetition Secured Parties in property of the Debtors' estates. For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, the Prepetition Agents and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b) *Carve Out Reserves*. On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to any Committee that may be appointed in these Chapter 11 Cases (the "**Termination Declaration Date**"), the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims. On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Agent for the benefit of the Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out

Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the Lenders, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the DIP Documents, or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 5, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 5, prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable. Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Documents. Further, notwithstanding anything to the contrary in the Interim Order or this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out and (iii) in no way shall the Initial Budget, Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Order or this Final Order, the DIP Facility, or the Prepetition Secured Debt, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Obligations, and the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(c) *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d) *No Direct Obligation to Pay Allowed Professional Fees.* None of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e) *Payment of Carve Out On or After the Termination Declaration Date.* Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

6. *DIP Superpriority Claims.* Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations constitute allowed superpriority administrative expense claims against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**") but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the DIP Documents and this Final Order, subject only to the liens on such property and the Carve Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the

event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise. The DIP Superpriority Claims shall be senior to the 507(b) Claims (as defined herein); *provided* that the DIP Superpriority Claims in respect of the DIP Roll-Up Loans shall be subject and subordinate to the DIP Superpriority Claims in respect of the DIP New Money Loans.

       7.    *DIP Liens*.

       (a)    *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution, recordation, registration or filing by the DIP Loan Parties of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statements, notation of certificates of title for titled goods or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral, the following security interests and liens were granted by the DIP Loan Parties to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all Cash Collateral and other property of the DIP Loan Parties identified in clauses (i) through (iv) below being collectively referred to as the "**DIP Collateral**"), subject only to the payment of the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**"):

           (i)    *First Priority Liens on Unencumbered Property*. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, whether real or personal, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of the DIP Loan Parties (whether maintained with the DIP Agent or affiliate of a DIP Loan Party or otherwise) and any investment of such

cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, claims and causes of action, tort claims and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than (a) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (b) the Avoidance Actions; (the "**Unencumbered DIP Loan Party Property**"); provided that the Avoidance Proceeds shall constitute DIP Collateral.

(ii) *Liens Priming Certain Prepetition Secured Parties' Liens*. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon the Prepetition Collateral regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected, which shall prime in all respects the interests of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (the "**Primed Liens**"). Notwithstanding anything herein to the contrary, the DIP Liens shall be (a) subject and junior to the Carve Out in all respects, (b) senior in all respects to the Prepetition Liens and (c) senior to the Adequate Protection Liens.

(iii) *Liens Junior to Certain Other Liens*. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each DIP Loan Party other than Unencumbered Property and the property subject to the Primed Liens granted by this Final Order, which shall be junior and subordinate to (a) any valid, perfected and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date and (b) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; *provided* that nothing in the foregoing clauses (a) and (b) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder.

(iv) *Liens Senior to Certain Other Liens.* The DIP Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the DIP Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties or (C) any intercompany or affiliate liens of the DIP Loan Parties or security interests of the DIP Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b) *Relative Priority of DIP Liens.* Notwithstanding anything to the contrary herein, the DIP Liens in respect of the DIP Roll-Up Loans shall be pari passu with DIP Liens in respect of the DIP New Money Loans in all respects; *provided* that any proceeds received on account of the DIP Collateral shall be applied first to repayment of the DIP New Money Loans before any DIP Roll-Up Loans.

(c) *Automatic Effectiveness of Liens.* The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the DIP Loan parties to grant the liens and security interests in the DIP Agent, the other DIP Secured Parties and the Prepetition Secured Parties, in any such case, contemplated by this Final Order and the other DIP Documents.

8. *Protection of DIP Lenders' Rights.*

(a) So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined, and used, in the DIP Credit Agreement) (the "**DIP Commitments**") under the DIP Credit Agreement, unless the DIP Agent and Required DIP Lenders shall agree in writing otherwise, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens

granted thereto pursuant to the Prepetition Secured Debt Documents or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, including in connection with the Prepetition Liens or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of all DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (iv) at the request of the DIP Agent, deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this Final Order.

(b) To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee

and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and it shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to permit all transfers contemplated hereunder and take any or all of the following actions, at the same or different time: (i) immediately upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and in each case without further order or application of the Court, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains, (B) all DIP Obligations to be immediately due, owing and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan Parties, notwithstanding anything herein or in any DIP Document to the contrary, and (C) the termination of the applicable DIP Documents as to any future liability or obligation of the DIP Agent and the applicable DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the DIP Obligations); (ii) seek emergency relief from the Automatic Stay on no more than 5 business days' notice to request a further order of the Court permitting the DIP Secured Parties, whether or not the maturity of any of the DIP Obligations shall have been accelerated, to proceed to protect, enforce and exercise all rights and remedies of the DIP Secured Parties under the DIP Documents for such DIP Facility or applicable law and to exercise all other rights and remedies provided for in the DIP Documents and under applicable law with respect to the DIP Collateral, including, but not limited to, by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any covenant or agreement contained in any such DIP Document or any instrument pursuant to which such DIP Obligations are evidenced, and, if such

amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or any other legal or equitable right of any of such DIP Secured Parties; (iii) unless this Court orders otherwise during the Remedies Notice Period (as defined herein) after a hearing but otherwise without further order or application of the Court, upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**"), via email to counsel to the Debtors and the office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**"), to terminate and withdraw consent to the DIP Loan Parties' continued use of Cash Collateral; and (iv) without further order or application of the Court, the termination of the RSA (as defined in the DIP Credit Agreement (the "**RSA**")) in accordance with the terms thereof.

(d)      Solely during the Remedies Notice Period, the DIP Loan Parties shall be permitted to use Cash Collateral (i) in the ordinary course of business, subject to the Budget in accordance with the DIP Documents, and (ii) for the funding of the Carve-Out. During the Remedies Notice Period, the Debtors, the Committee (if appointed) and/or any party in interest shall be entitled to seek an emergency hearing with the Court within the Remedies Notice Period for the sole purpose of contesting whether, in fact, an Event of Default has occurred and is continuing. Except as set forth in this Final Order, the Debtors shall waive their right to seek relief under the Bankruptcy Code, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights or remedies of the DIP Secured Parties set forth in this Final Order or the DIP Documents.

(e)      In no event shall any of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, be subject to the equitable doctrine of "marshaling" or any similar

doctrine with respect to the DIP Collateral, the Prepetition Collateral or the Adequate Protection Collateral. Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(f) No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the DIP Loan Parties' authority to continue to use Cash Collateral, (ii) any actual or purported termination of the DIP Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the DIP Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

(g) Without limiting the provisions and protections of Paragraph 6 above, but subject in all respects to the Carve Out, if at any time prior to the payment in full in accordance with the DIP Documents of all the DIP Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Final Order or the DIP Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application to the DIP Obligations until such DIP Obligations are paid in full.

9. *Use of Cash Collateral*. The DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order (including compliance with the Budget (as defined herein) in accordance with the DIP Documents) during the period from the Petition Date through

and including date of occurrence of an Event of Default, to use the Cash Collateral; *provided* that (x) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (y) except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court. For the avoidance of doubt, the DIP Loan Parties are permitted to use Cash Collateral for Prepetition Secured Parties Adequate Protection Payments, as provided herein.

10. *Adequate Protection of II-A Term Loan Secured Parties.* The II-A Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates including the Prepetition Collateral, pursuant to the II-A Term Loan Documents, to the extent of the diminution in the value of the II-A Term Loan Secured Parties' respective interests in property of the Debtors' estates including the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**II-A Term Loan Secured Parties Adequate Protection Claims**"). In consideration of the foregoing, the II-A Term Loan Agent for the benefit of the II-A Term Loan Secured Parties, is hereby granted the following (collectively, the "**II-A Term Loan Adequate Protection Obligations**"):

(a) *II-A Term Loan Debt Adequate Protection Liens.* The II-A Term Loan Agent, for itself and for the benefit of the other II-A Term Loan Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the II-A Term Loan Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all Cash Collateral and

all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**II-A Term Loan Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**II-A Term Loan Secured Parties Adequate Protection Liens**"):

(i) *Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

(ii) *First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Debtors that are not DIP Loan Parties, whether real or personal, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien, including, without limitation, any and all unencumbered cash of such Debtors (whether maintained with the DIP Agent, Prepetition Agents, affiliate of such Debtors or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, real property leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock or other equity interests of subsidiaries, wherever located, intercompany loans and notes, servicing rights, swap and hedge proceeds and termination payments, claims and causes of action, tort claims and the proceeds, products, rents and profits, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (a) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (b) the Avoidance Actions (the "**Other Debtor Unencumbered Property**").

(iii) *Liens Junior to Certain Other Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all

tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any (a) any valid, perfected and non-avoidable senior liens (other than the Primed Liens) in existence immediately prior to the Petition Date and (b) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (any such liens described in the foregoing clauses (a) and (b), the "**Other Permitted Liens**"), which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv)     *Liens Senior to Certain Existing Liens.*  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided* that the II-A Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to Other Permitted Liens and the DIP Liens on such property; *provided, further* that the II-A Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v)     *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the II-A Term Loan Secured Parties Adequate Protection Liens shall be senior to an not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b)      *II-A Term Loan Debt Section 507(b) Claims.*  The II-A Term Loan Agent, for itself and for the benefit of the other II-A Term Loan Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the II-A Term Loan Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**II-A Term Loan Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The II-A Term Loan Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims (as defined herein).

(c)      *II-A Term Loan Debt Adequate Protection Cash Payments.*  Subject to paragraph 16 of this Final Order, the II-A Term Loan Agent, for the benefit of the applicable Term Loan Secured Parties, shall receive current payment in cash on the due dates provided in the II-A Term Loan Documents in an amount equal to the sum of all unpaid fees and expenses owing to the II-A Term Loan Agent under the II-A Term Loan Documents (collectively, the "**II-A Term Loan Secured Parties Adequate Protection Payments**").

11.      *Adequate Protection of II-M Term Loan Secured Parties.*  The II-M Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates including the Prepetition Collateral pursuant to the II-M Term Loan Documents, to the extent of the diminution in the value of the II-M Term Loan Secured Parties' respective interests in property of the Debtors' estates including the Prepetition Collateral from and after the Petition Date, if

any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**II-M Term Loan Secured Parties Adequate Protection Claims**"). In consideration of the foregoing, the II-M Term Loan Agent for the benefit of the II-M Term Loan Secured Parties, is hereby granted the following (collectively, the "**II-M Term Loan Adequate Protection Obligations**"):

(a) *II-M Term Loan Debt Adequate Protection Liens*. The II-M Term Loan Agent, for itself and for the benefit of the other II-M Term Loan Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the II-M Term Loan Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all Cash Collateral and all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**II-M Term Loan Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**II-M Term Loan Secured Parties Adequate Protection Liens**"):

(i) *Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

(ii) *First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Other Debtor Unencumbered Property, other than: (i) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (ii) the Avoidance Actions.

(iii) *Liens Junior to Certain Other Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Permitted Lien, which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv) *Liens Senior to Certain Existing Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the II-M Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to any Other Permitted Liens and the DIP Liens on such property; *provided*, *further* that the II-M Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v) *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the II-M Term Loan Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.

(b) *II-M Term Loan Debt Section 507(b) Claims*. The II-M Term Loan Agent,

for itself and for the benefit of the other II-M Term Loan Secured Parties, is hereby granted,

subject to the Carve Out, an allowed superpriority administrative expense claim as provided for

in section 507(b) of the Bankruptcy Code in the amount of the II-M Term Loan Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**II-M Term Loan Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors. The II-M Term Loan Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c) *II-M Term Loan Debt Adequate Protection Cash Payments*. Subject to paragraph 16 of this Final Order, the II-M Term Loan Agent, for the benefit of the applicable Term Loan Secured Parties, shall receive current payment in cash on the due dates provided in the II-M Term Loan Documents in an amount equal to the sum of all unpaid fees and expenses owing to the II-M Term Loan Agent under the II-M Term Loan Documents (collectively, the "**II-M Term Loan Secured Parties Adequate Protection Payments**").

12. *Adequate Protection of SIP-II Term Loan Secured Parties*. The SIP-II Term Loan Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates including the Prepetition Collateral pursuant to the SIP-II Term Loan Documents, to the extent of the diminution in the value of the SIP-II Term Loan Secured Parties' respective interests in property of the Debtors' estates including the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**SIP-II Term Loan Secured Parties Adequate Protection Claims**"). In consideration of the foregoing, the SIP-II

Term Loan Agent for the benefit of the SIP-II Term Loan Secured Parties, is hereby granted the following (collectively, the "**SIP-II Term Loan Adequate Protection Obligations**"):

(a)　　*SIP-II Term Loan Debt Adequate Protection Liens*.  The SIP-II Term Loan Agent, for itself and for the benefit of the other SIP-II Term Loan Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the SIP-II Term Loan Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all Cash Collateral and all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**SIP-II Term Loan Adequate Protection Collateral**" and, collectively with the II-A Term Loan Adequate Protection Collateral and the II-M Term Loan Adequate Protection Collateral, the "**Term Loan Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**SIP-II Term Loan Secured Parties Adequate Protection Liens**"):

(i)　　*Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

(ii)　　*First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Other Debtor Unencumbered Property, other than: (i) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (ii) the Avoidance Actions.

(iii)　　*Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Permitted Lien, which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv)    *Liens Senior to Certain Existing Liens.*  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the SIP-II Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to any Other Permitted Liens and the DIP Liens on such property; *provided*, *further* that the SIP-II Term Loan Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v)    *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the SIP-II Term Loan Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.  For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Final Order, (ii)  carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business, (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation, and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(b)     *SIP-II Term Loan Debt Section 507(b) Claims*.  The SIP-II Term Loan

Agent, for itself and for the benefit of the other SIP-II Term Loan Secured Parties, is hereby

granted, subject to the Carve Out, an allowed superpriority administrative expense claim as

provided for in section 507(b) of the Bankruptcy Code in the amount of the SIP-II Term Loan

Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority

in payment over any and all administrative expenses of the kind specified or ordered pursuant to

any provision of the Bankruptcy Code (the "**SIP-II Term Loan Secured Parties 507(b)**

**Claim**"), which administrative claim shall have recourse to and be payable from all prepetition

and postpetition property of the Debtors.  The SIP-II Term Loan Secured Parties 507(b) Claim

shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and

shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c)     *SIP-II Term Loan Debt Adequate Protection Cash Payments*.  Subject to

paragraph 16 of this Final Order, the SIP-II Term Loan Agent, for the benefit of the applicable

Term Loan Secured Parties, shall receive current payment in cash on the due dates provided in

the SIP-II Term Loan Documents in an amount equal to the sum of all unpaid fees and expenses

owing to the SIP-II Term Loan Agent under the SIP-II Term Loan Documents (collectively, the

"**SIP-II Term Loan Secured Parties Adequate Protection Payments**").

13.     *Adequate Protection of II-A RBL Secured Parties*.  The II-A RBL Secured Parties

are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate

protection of their interests in property of the Debtors' estates including the Prepetition

Collateral pursuant to the II-A RBL Documents, to the extent of the diminution in the value of

the II-A RBL Secured Parties' respective interests in property of the Debtors' estates including

the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for

under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**II-A RBL Secured Parties Adequate Protection Claims**"). In consideration of the foregoing, the II-A RBL Agent for the benefit of the II-A Term Loan Secured Parties, is hereby granted the following (collectively, the "**II-A RBL Adequate Protection Obligations**"):

(a) *II-A RBL Debt Adequate Protection Liens*. The II-A RBL Agent, for itself and for the benefit of the other II-A RBL Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the II-A RBL Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon Cash Collateral and all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**II-A RBL Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**II-A RBL Secured Parties Adequate Protection Liens**"):

(i) *Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

(ii) *First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Other Debtor Unencumbered Property, other than: (i) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (ii) the Avoidance Actions.

(iii)  *Liens Junior to Certain Other Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Permitted Lien, which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv)  *Liens Senior to Certain Existing Liens*.  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the II-A RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to any Other Permitted Liens and the DIP Liens on such property; *provided*, *further* that the II-A RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v)  *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the II-A RBL Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof.  For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Final Order, (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business, (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation, and

(iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(b) *II-A RBL Debt Section 507(b) Claims.* The II-A RBL Agent, for itself and for the benefit of the other II-A RBL Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the II-A RBL Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**II-A RBL Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors. The II-A RBL Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c) *II-A RBL Debt Adequate Protection Cash Payments.* Subject to paragraph 16 of this Final Order, the II-A RBL Agent, for the benefit of the applicable II-A RBL Secured Parties, shall receive current payment in cash on the due dates provided in the II-A RBL Documents in an amount equal to the sum of all unpaid fees and expenses owing to the II-A RBL Agent under the II-A RBL Documents (collectively, the "**II-A RBL Secured Parties Adequate Protection Payments**").

14. *Adequate Protection of II-M RBL Secured Parties.* The II-M RBL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates including the Prepetition Collateral pursuant to the II-M RBL Documents, to the extent of the diminution in the value of the II-M RBL Secured Parties' respective interests in property of the Debtors' estates including

the Prepetition Collateral from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**II-M RBL Secured Parties Adequate Protection Claims**"). In consideration of the foregoing, the II-M RBL Agent for the benefit of the II-M Term Loan Secured Parties, is hereby granted the following (collectively, the "**II-M RBL Adequate Protection Obligations**"):

(a) *II-M RBL Debt Adequate Protection Liens*. The II-M RBL Agent, for itself and for the benefit of the other II-M RBL Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the II-M RBL Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all Cash Collateral and all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**II-M RBL Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the "**II-M RBL Secured Parties Adequate Protection Liens**"):

(i) *Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

(ii) *First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Other Debtor Unencumbered Property, other than: (i) the Excluded Assets, but

47

including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (ii) the Avoidance Actions.

(iii) *Liens Junior to Certain Other Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Permitted Lien, which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

(iv) *Liens Senior to Certain Existing Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the II-M RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to any Other Permitted Liens and the DIP Liens on such property; *provided*, *further* that the II-M RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v) *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the II-M RBL Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof. For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Final Order, (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or

other similar liens arising in the ordinary course of business, (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation, and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(b)     *II-M RBL Debt Section 507(b) Claims*.  The II-M RBL Agent, for itself and for the benefit of the other II-M RBL Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the II-M RBL Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**II-M RBL Secured Parties 507(b) Claim**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors.  The II-M RBL Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c)     *II-M RBL Debt Adequate Protection Cash Payments*.  Subject to paragraph 16 of this Final Order, the II-M RBL Agent, for the benefit of the applicable II-M RBL Secured Parties, shall receive current payment in cash on the due dates provided in the II-M RBL Documents in an amount equal to the sum of all unpaid fees and expenses owing to the II-M RBL Agent under the II-M RBL Documents (collectively, the "**II-M RBL Secured Parties Adequate Protection Payments**").

15.     *Adequate Protection of SIP-II RBL Secured Parties*.  The SIP-II RBL Secured Parties are entitled, pursuant to sections 361, 362, 363(e), and 507 of the Bankruptcy Code, to adequate protection of their interests in property of the Debtors' estates including the Prepetition

Collateral pursuant to the SIP-II RBL Documents, to the extent of the diminution in the value of the SIP-II RBL Secured Parties' respective interests in property of the Debtors' estates from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including the imposition of the Automatic Stay pursuant to section 362 of the Bankruptcy Code (the "**SIP-II RBL Secured Parties Adequate Protection Claims**" and, collectively with the II-A Term Loan Secured Parties Adequate Protection Claims, II-M Term Loan Secured Parties Adequate Protection Claims, SIP-II Term Loan Secured Parties Adequate Protection Claims, II-A RBL Secured Parties Adequate Protection Claims, and II-M RBL Secured Parties Adequate Protection Claims, the "**Adequate Protection Claims**"). In consideration of the foregoing, the SIP-II RBL Agent for the benefit of the SIP-II Term Loan Secured Parties, is hereby granted the following (collectively, the "**SIP-II RBL Adequate Protection Obligations**" and, collectively with the II-A Term Loan Secured Parties Adequate Protection Obligations, II-M Term Loan Secured Parties Adequate Protection Obligations, SIP-II Term Loan Secured Parties Adequate Protection Obligations, II-A RBL Secured Parties Adequate Protection Obligations, and II-M RBL Secured Parties Adequate Protection Obligations, the "**Adequate Protection Obligations**"):

(a)     *SIP-II RBL Debt Adequate Protection Liens*. The SIP-II RBL Agent, for itself and for the benefit of the other SIP-II RBL Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the SIP-II RBL Secured Parties Adequate Protection Claims, a valid, perfected replacement security interest in and lien upon all Cash Collateral and all other of the following (all Cash Collateral and property identified in clauses (i) through (v) below being collectively referred to as the "**SIP-II RBL Adequate Protection Collateral**" and, collectively with the II-A

RBL Adequate Protection Collateral, the II-M RBL Adequate Protection Collateral and the Term Loan Adequate Protection Collateral, the "**Adequate Protection Collateral**"), subject only to the Carve Out (all such liens and security interests, the SIP-II RBL Secured Parties Adequate Protection Liens and, collectively with the II-A Term Loan Secured Parties Adequate Protection Liens, II-M Term Loan Secured Parties Adequate Protection Liens, SIP-II Term Loan Secured Parties Adequate Protection Liens, II-A RBL Secured Parties Adequate Protection Liens, II-M RBL Secured Parties Adequate Protection Liens, the "**Adequate Protection Liens**"):

    (i)    *Second Priority Liens on DIP Loan Party Unencumbered Property*: Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected second priority senior security interest in and lien upon all DIP Loan Party Unencumbered Property, which lien and security interest shall rank *pari passu* with the other Adequate Protection Liens (as defined herein) on DIP Loan Party Unencumbered Property and shall be subject only to the DIP Liens.

    (ii)    *First Priority Liens on Other Debtor Unencumbered Property*: Pursuant to section 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all Other Debtor Unencumbered Property, other than: (i) the Excluded Assets, but including the proceeds of Excluded Assets that do not otherwise constitute Excluded Assets, and (ii) the Avoidance Actions.

    (iii)    *Liens Junior to Certain Other Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Debtor, whether real or personal, and the proceeds, products, rents and profits thereof, whether arising under section 552(b) of the Bankruptcy Code or otherwise, that is subject to any Other Permitted Lien, which security interest and lien shall be junior and subordinate to any Other Permitted Liens and DIP Liens on such property, and which security interest and lien shall rank *pari passu* with the other Adequate Protection Liens with respect to such collateral.

    (iv)    *Liens Senior to Certain Existing Liens*. Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected priming lien on, and security interest in, the Prepetition Collateral, and all products, proceeds, rents and profits

thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise; *provided*, that the SIP-II RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) shall be junior to any Other Permitted Liens and the DIP Liens on such property; *provided, further* that the SIP-II RBL Secured Parties Adequate Protection Liens set forth in this paragraph (iv) on the Prepetition Collateral shall be senior to the Prepetition Liens with respect to such collateral and *pari passu* with each of the Adequate Protection Liens with respect to such collateral.

(v)     *Status of Adequate Protection Liens.* Subject to the Carve Out and except as otherwise provided herein, the SIP-II RBL Secured Parties Adequate Protection Liens shall be senior to and not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in this Final Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors or (C) any intercompany or affiliate liens of the Debtors or security interests of the Debtors; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code granted after the date hereof. For the avoidance of doubt, the Debtors are permitted to grant the following postpetition liens and security interests: (i) those granted pursuant to this Final Order, (ii) carriers', mechanics', operators', repairmen's, warehousemen's, or other similar liens arising in the ordinary course of business, (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation, and (iv) deposits to secure the payment of any postpetition statutory obligations and performance bonds.

(b)     *SIP-II RBL Debt Section 507(b) Claims.* The SIP-II RBL Agent, for itself and for the benefit of the other SIP-II RBL Secured Parties, is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the SIP-II RBL Secured Parties Adequate Protection Claims with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**SIP-II RBL Secured Parties 507(b) Claim**" and, collectively with the

II-A Term Loan Secured Parties 507(b) Claim, II-M Term Loan Secured Parties 507(b) Claim, SIP-II Term Loan Secured Parties 507(b) Claim, II-A RBL Secured Parties 507(b) Claim, and II-M RBL Secured Parties 507(b) Claim, the "**Prepetition Secured Parties 507(b) Claims**"), which administrative claim shall have recourse to and be payable from all prepetition and postpetition property of the Debtors. The SIP-II RBL Secured Parties 507(b) Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims and shall rank *pari passu* with the other Prepetition Secured Parties 507(b) Claims.

(c)     *SIP-II RBL Debt Adequate Protection Cash Payments.*  Subject to paragraph 16 of this Final Order, the SIP-II RBL Agent, for the benefit of the applicable SIP-II RBL Secured Parties, shall receive current payment in cash on the due dates provided in the SIP-II RBL Documents in an amount equal to the sum of all unpaid fees and expenses owing to the SIP-II RBL Agent under the SIP-II RBL Documents (collectively, the "**SIP-II RBL Secured Parties Adequate Protection Payments**" and, collectively with the II-A Term Loan Secured Parties Adequate Protection Payments, II-M Term Loan Secured Parties Adequate Protection Payments, SIP-II Term Loan Secured Parties Adequate Protection Payments, II-M RBL Secured Parties Adequate Protection Payments, and II-A RBL Secured Parties Adequate Protection Payments, the "**Prepetition Secured Parties Adequate Protection Payments**").

16.     *Other Adequate Protection of Prepetition Secured Parties.*

(a)     *Prepetition Secured Parties Fees and Expenses.*  Upon entry of this Final Order and to the extent not already paid by the Debtors following entry of the Interim Order, the Debtors are authorized and directed to pay in cash all reasonable and documented out-of-pocket professional fees and expenses payable to the advisors to the Term Loan Agents and the advisors to the RBL Agents, including, without limitation, the fees and expenses of (A) Davis Polk &

Wardwell LLP, (B) Vinson & Elkins LLP, (C) Houlihan Lokey, Inc. and (D) special and local counsel in each relevant jurisdiction, and all reasonable and documented out-of-pocket professional fees and expenses payable to the Prepetition Agents that have accrued as of the Petition Date. The payment of the fees, expenses and disbursements (to the extent incurred after the Petition Date) set forth in this paragraph 16(a) of this Final Order shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the U.S. Trustee, and counsel for the Committee (if any) (the "**Review Period**") of invoices therefore without the necessity of filing formal fee applications or compliance with the U.S. Trustee's fee guidelines. Such invoices provided to the Debtors, the U.S. Trustee, and counsel for the Committee (if any) shall include the number of hours billed by the applicable professional (except for financial advisors compensated on other than an hourly basis) and a summary statement of services provided and the expenses incurred, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine. Any objections raised by the Debtors, the U.S. Trustee, or the Committee (if any) with respect to such invoices must be in writing and state with particularity the grounds therefore and must be submitted to the applicable professional so as to be actually received prior to the expiration of the Review Period. Following the Review Period, any such timely received objection will be subject to resolution by the Court to the extent it remains unresolved. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors and the applicable parties shall attempt to negotiate a resolution in good faith until the time of such resolution by the Court. Notwithstanding the foregoing, the

Debtors are authorized and directed to pay all adequate protection fees and expenses incurred under this paragraph 16(a) of this Final Order prior to the Petition Date, to the extent not already paid by the Debtors following entry of the Interim Order, without the need for any applicable professional to first deliver a copy of its invoice or other supporting documentation. Notwithstanding anything to the contrary, in the event the fees are not allowed under section 506 of the Bankruptcy Code or provided for under a confirmed plan, then such payments shall be recharacterized to apply against principal.

(b)     *Financial Reporting*.   The Debtors shall comply with all reporting requirements and honor all inspection rights set forth in the Prepetition Debt Documents and shall provide such other business or financial information that is reasonably requested by the RBL Agents, the Term Loan Agents, or their respective advisors.

(c)     *Milestones*. The Prepetition Secured Parties are hereby entitled to the performance by the Debtors of the Milestones (as defined in the DIP Credit Agreement).

17.     *Texas Tax Liens*.   Notwithstanding any other provisions included in the Interim Order or this Final Order to the contrary, to the extent the Texas Tax Authorities[3] or the Local Texas Tax Authorities[4] have valid, binding, perfected, enforceable and non-avoidable liens for state or local ad valorem taxes on any DIP Collateral that under the applicable state statute are granted priority over a prior perfected security interest or lien, the DIP Liens and Adequate Protection Liens granted under the Interim Order or this Final Order on such DIP Collateral shall be subject to such state statutory tax liens, and all parties' rights to object to the priority, validity,

---

[3]     For purposes of this Final Order, the term "Texas Tax Authorities" shall refer to Midland Central Appraisal District Texas, the County of Milam, Texas, and Reeves Central Appraisal District, Texas.

[4]     For purposes of this Final Order, the term "Local Texas Tax Authorities" shall refer to Ector County Appraisal District, Texas, Elysian Fields Independent School District, Texas, Harris County, Texas, Loving County, Texas, Reeves County, Texas, Rusk County, Texas, Shelby County, Texas, Smith County, Texas, Tom Green County Appraisal District, Texas, and Ward County, Texas.

amount, and extent of the claims and liens asserted by the Texas Tax Authorities or the Local Texas Tax Authorities are fully preserved.

18.     *Budget Maintenance and Compliance*.  The Debtors have prepared and delivered to the DIP Agent an initial budget, in form and substance acceptable to the DIP Agent and the Required DIP Lenders (the "**Initial Budget**"), a copy of which is attached to this Final Order as **Schedule 1**.  The Initial Budget sets forth, among other things, the Debtors' projected receipts, operating disbursements (including payroll and benefits, general and administrative expenses, and royalty payments), non-operating disbursements (including capital expenditures, debt service and professional fees), and net cash flow, for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.  Pursuant to the DIP Credit Agreement, the Debtors shall prepare and deliver a new budget every four weeks after the Petition Date covering the thirteen (13) calendar week period commencing on the first day of each four-week anniversary of the Petition Date, in form and substance reasonably satisfactory to the Required DIP Lenders (the Initial Budget and each subsequent approved budget (a "**Budget**") (including any changes made in any such updated Budget with respect to any periods that were included in a previously delivered Budget; *provided* that a separate explanation in reasonable detail of such changes shall be provided to the DIP Lenders), it being understood that if the Required DIP Lenders have not objected to an updated Budget within ten (10) days after delivery thereof, the updated Budget shall be deemed to be approved.  The Budget is approved on a final basis.  DIP Collateral, Prepetition Collateral and Cash Collateral under this Final Order shall only be used by the Debtors in accordance with this Final Order and consistent with the Budget in accordance with the DIP Documents or as otherwise agreed by the Required DIP Lenders.  As set forth in the DIP Credit Agreement, the

Budget may be modified with the written consent of the Debtors and the Required DIP Lenders and such modified Budget shall be filed with the Bankruptcy Court. None of the Prepetition Secured Parties' or DIP Secured Parties' consent (if any) to, or acknowledgment of, the Budget shall be construed as consent to use of the proceeds of the DIP Collateral, Adequate Protection Collateral, Prepetition Collateral or Cash Collateral after an Event of Default or Termination Declaration Date, regardless of whether the aggregate funds shown on the Budget have been expended.

19.     Upon payment in full of all DIP Obligations, the Budget shall continue to be updated in accordance with the terms and conditions of the DIP Credit Agreement, except that the approval of the Prepetition Agents shall be substituted for the approval of the DIP Agent and/or the Required DIP Lenders.

20.     *No Marshaling/Application of DIP Proceeds*. The DIP Secured Parties shall be entitled to apply the payments or proceeds of the DIP Collateral, in accordance with the provisions of the DIP Documents, and in no event shall the DIP Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

21.     *No Marshaling/Application of Proceeds of Prepetition and Adequate Protection Collateral*. The Prepetition Secured Parties shall be entitled to apply the payments or proceeds of the Prepetition Collateral and Adequate Protection Collateral in accordance with the provisions of the Prepetition Debt Documents, and in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral.

22.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, Prepetition Collateral and Adequate Protection Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent and the Prepetition Agents, as the case may be, that holds a lien on the relevant asset, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, and nothing contained in this Final Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

23.    *Bankruptcy Code Section 552(b).*  Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral or the Adequate Protection Collateral.

24.    *Reservation of Rights of Prepetition Secured Parties.*  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court affirms and finds that the adequate protection provided to the Prepetition Secured Parties for any diminution in their respective interests in the property of the Debtors' estates, including their respective interests in the value of the Prepetition

Collateral is reasonable and necessary to protect the interests of the Prepetition Secured Parties; *provided* that any Prepetition Secured Party may request further or different adequate protection.

25.    *Perfection of Liens.*

(a)    Without in any way limiting the automatically effective perfection of the DIP Liens and Adequate Protection Liens granted in this Final Order, the DIP Agent, the RBL Agents, and the Term Loan Agents are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent, the RBL Agents, and the Term Loan Agents shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order. Upon the request of any of the DIP Agent, the RBL Agents, and the Term Loan Agents, each of the Debtors, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the validation, perfection, preservation and enforcement of the DIP Liens and Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)	A certified copy of this Final Order may, in the discretion of the DIP Agent, each acting on its own behalf or as directed by the Required DIP Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Order for filing and/or recording, as applicable.  The Automatic Stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)	To the extent that any Prepetition Secured Party is the secured party under any account control agreements, listed as loss payee or additional insured under any of the DIP Loan Parties' insurance policies or is the secured party under any other agreement, the DIP Agent is also deemed to be the secured party under such account control agreements, loss payee or additional insured under the DIP Loan Parties' insurance policies and the secured party under each such agreement (in any such case with the same priority of liens and claims thereunder relative to the priority of (x) the Prepetition Liens and Adequate Protection Liens and (y) the DIP Liens, as set forth herein), and shall have all rights and powers in each case attendant to that position (including, without limitation, rights of enforcement, but subject in all respects to the terms of this Final Order), and shall, subject to the terms of this Final Order, act in that capacity and distribute any proceeds recovered or received in respect of any of the foregoing, first, subject to the Carve Out, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Debt.  In accordance with the terms of this Final Order and the other DIP Documents, the Prepetition Agents shall serve as agent for the DIP Agent for purposes of perfecting such DIP Agent's security interests in and liens on all DIP Collateral and Prepetition

Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

26. *Preservation of Rights Granted Under this Final Order.*

(a) Other than the Carve Out and other claims and liens expressly granted by this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Secured Parties shall be permitted while any of the DIP Obligations remain outstanding, and, except as otherwise expressly provided in paragraph 5 of this Final Order, the DIP Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (ii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, (iii) subject or junior to any intercompany or affiliate liens or security interests of the Debtors, or (iv) subordinated to or made *pari passu* with any other lien or security interest.

(b) It shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors, without the prior written consent of the applicable Required DIP Lenders, seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Debtor or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i) a failure of the Debtors to make any payment under this Final Order to any of the Prepetition Secured Parties when due and such failure is continuing for one (1) business day after the date thereof;

(ii) a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Final Order or (y)

comply with any covenant or agreement in this Final Order in any material respect; or

(iii) any "Event of Default" as defined in the DIP Credit Agreement.

Except as otherwise provided in this Final Order, any material violation of any of the terms of this Final Order or any occurrence of an "Event of Default" under and as defined in this Final Order or the DIP Credit Agreement shall constitute an event of default (each an "**Event of Default**") and upon any such Event of Default, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement.  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i)  the DIP Superpriority Claims and the DIP Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims and DIP Liens shall, notwithstanding such dismissal, remain binding on all parties in interest), (ii) the other rights granted by this Final Order shall not be affected, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c) If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Agent, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens or Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any DIP Obligations incurred by the DIP Loan Parties to the DIP

Secured Parties prior to the actual receipt of written notice by the DIP Agent, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code and this Final Order with respect to all uses of Cash Collateral and the DIP Obligations.

(d)     Except as expressly provided in this Final Order, the DIP Obligations and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Final Order shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, substantively consolidating any of the cases with another case, terminating the joint administration of these Chapter 11 Cases or by any other act or omission, (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents or pursuant to a separate approval by the Required DIP Lenders), or (iii) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Loan Parties have waived any discharge as to any remaining DIP Obligations.   The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, and all other rights and remedies of the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect

until the DIP Obligations and the Prepetition Obligations are indefeasibly paid in full in cash, as set forth herein and the DIP Documents and the Total DIP Commitment has been terminated.

27.     *Payments Free and Clear.*  Subject to the Carve Out, any and all payments or proceeds remitted to the DIP Agent by, through or on behalf of the DIP Lenders pursuant to the provisions of the Interim Order, Final Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

28.     *Releases, Covenant Not to Sue, Indemnity.*  Subject to paragraph 29, as of the entry of the Interim Order the Debtors hereby absolutely and unconditionally release and forever discharge and acquit each of the DIP Secured Parties and the Prepetition Secured Parties and their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (the "**Representatives**" and collectively with the DIP Secured Parties and the Prepetition Secured Parties, the "**Released Parties**"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, responsibilities, disputes, remedies, indebtedness, obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorney's fees, costs, expenses, judgements and causes of action  but excluding funding obligations under the DIP Documents arising after the date of the Interim Order (collectively, the "**Released Claims**") of any kind, nature or description, whether

matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or federal or common law or statute or regulation or otherwise, whether or not arising out of or related to (as applicable) the DIP Documents the Prepetition Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the Interim Order, and further covenant not to sue and to indemnify (in addition to and not in place of any and all other indemnities in favor of the Released Parties) the Released Parties on account of any and all Released Claims. The releases in this paragraph are in addition to and shall not limit any other releases, covenants not to sue, or waivers by the Releasing Parties in favor of the Released Parties; *provided*, *however*, that the Released Claims shall not include those determined by a final, non-appealable order of a court of competent jurisdiction to have arisen from willful misconduct, actual fraud, or gross negligence.

29. *Effect of Stipulations on Third Parties*. The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order and this Final Order, including, without limitation, in paragraph H of the Findings of Fact and Conclusions of Law of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order and this Final Order, including, without limitation, in

paragraph H of the Findings of Fact and Conclusions of Law of this Final Order, shall be binding upon all other parties in interest, including, without limitation, any Committee or other statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph) by no later than (i) the earlier of (x) five (5) business days prior to the commencement of the hearing to confirm a chapter 11 plan in these Chapter 11 Cases, (y) 75 calendar days after entry of this Final Order and (z) solely for any Committee, 60 calendar days after the appointment of any Committee if appointed within 30 days after the Petition Date, (ii) any such later date as has been agreed to, in writing, by the Prepetition Agents (with the consent of the Required DIP Lenders) as applicable (the time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or their Representatives in connection with matters related to the (i) Prepetition Debt Documents (ii) Prepetition Obligations, (iii) Prepetition Liens or (iv) Prepetition Collateral, and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in

connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred. If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in the Interim Order or this Final Order shall be binding on all parties in interest, including, without limitation, the Committee (if any), (b) the obligations of the Prepetition Obligors under the Prepetition Debt Documents shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), (c) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, first-priority security interests and liens, not subject to recharacterization, subordination, avoidance or other defense, and (d) the Prepetition Obligations and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee (if any), any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the

Prepetition Secured Parties and their Representatives arising out of or relating to the Prepetition Debt Documents shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in the Interim Order or this Final Order, including, without limitation, in paragraph H of the Findings of Fact and Conclusions of Law of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee (if any), and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to (i) the Prepetition Debt Documents, (ii) the Prepetition Obligations or (iii) the Prepetition Liens. For the avoidance of doubt, none of the foregoing challenge provisions set forth in this paragraph shall apply to any DIP Secured Party, in its capacity as such, and in no event shall the DIP Facility, DIP Obligations or DIP Liens be subject to challenge pursuant to this paragraph on avoidance or any other grounds by any party.

30. *Limitation on Use of Carve Out, DIP Financing Proceeds, and Collateral.* Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral or Adequate Protection Collateral (including Cash Collateral) or any portion of the Carve Out may be used directly or indirectly by any Debtor, any Prepetition Pledgor, any Committee or any other official or unofficial committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any

Successor Case, including any chapter 7 case, or any other person, party or entity, (a) in connection with the investigation, threatened initiation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties or the Prepetition Secured Parties, or each of the foregoing's respective predecessors in interest, agents, affiliates, representatives, attorney or advisors, or any actions purporting to do the foregoing in respect of the DIP Obligations, the DIP Liens, the Prepetition Obligations, the Prepetition Liens and/or Adequate Protection Obligations granted to the Prepetition Secured Parties under the Interim Order or the Final Order, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Obligations, the DIP Liens, the Prepetition Liens and/or the liens, claims, rights, or security interests granted under this Final Order, the Final Order, the DIP Documents or the Prepetition Debt Documents including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) to prevent, hinder, or otherwise delay or interfere with the DIP Secured Parties' or the Prepetition Secured Parties', enforcement or realization on the Prepetition Obligations, Prepetition Collateral, DIP Obligations or DIP Collateral, and the liens, claims and rights granted to such parties under this Final Order or the Final Order, each in accordance with the DIP Documents, the Prepetition Debt Documents or this Final Order; (c) to seek to modify any of the rights and remedies granted to any of the DIP Secured Parties or Prepetition Secured Parties under this Final Order, the DIP Documents or the Prepetition Debt Documents, as applicable; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than liens permitted pursuant to the DIP Documents) or security interests in the DIP Collateral, the

Prepetition Collateral the Adequate Protection Collateral, or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens or Adequate Protection Claims, unless all DIP Obligations and Prepetition Obligations have been refinanced or paid in full; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including pursuant to any "first day orders," or pursuant to this Final Order); (ii) pursuant to the Budget in accordance with the DIP Documents and (iii) permitted under the DIP Documents; *provided* that, notwithstanding anything to the contrary herein, the Debtors and the Committee (if any) may use the proceeds of the DIP Loans and/or DIP Collateral to investigate but not to prosecute the claims and liens of the Prepetition Secured Parties and potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties up to an aggregate cap of no more than $50,000.

31. *Final Order Governs*. In the event of any inconsistency between the provisions of the Interim Order, this Final Order, the DIP Documents and any other order entered by this Court, the provisions of this Final Order shall govern. Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order, including, without limitation, the approved Initial Budget.

32. *Limitation of Liability*. In permitting the use of the DIP Collateral and Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order, none of the DIP Secured Parties, Prepetition Secured Parties or the Prepetition Agents shall (i) have any liability to any third party or be deemed to be in control of the operation of any

of the DIP Loan Parties or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of any of the DIP Loan Parties (as such terms, or any similar terms, are used in the Internal Revenue Code, United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the DIP Loan Parties, their creditors or their estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the DIP Loan Parties. Furthermore, nothing in this Final Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties, Prepetition Agents or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the DIP Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

33.     *Exculpation*. Nothing in this Final Order, the DIP Documents, the Prepetition Debt Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts. In addition, (a) the DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for: (i) the safekeeping of the DIP Collateral, Prepetition Collateral or Adequate Protection Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person, and (b) all risk of loss, damage, or destruction of the DIP Collateral, Prepetition Collateral and Adequate Protection Collateral shall be borne by the Debtors.

34. *II-B Assets and Claims.* Notwithstanding anything to the contrary in this Final Order, in no event shall any security interest or lien in any asset of, or any claim against, II-B be granted or created pursuant to this Final Order.

35. *Maintenance of Collateral.* The DIP Loan Parties shall comply with the covenants contained in the DIP Documents regarding the maintenance and insurance of the DIP Collateral.

36. *Binding Effect; Successors and Assigns.* The provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Committee (if any), the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that none of the DIP Secured Parties or Prepetition Secured Parties shall have any obligation to permit the use of the DIP Collateral or Prepetition Collateral by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

37. *Master Proof of Claim.* The Prepetition Agents shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Obligations arising under the Prepetition Debt Documents, nor shall any other Prepetition Secured Party be required to file

any proofs of claim in the Chapter 11 Cases or any Successor Case in order to assert claims on behalf of itself for payment of the Prepetition Obligations arising under the Prepetition Debt Documents. The statements of claim in respect of the Prepetition Obligations set forth in this Final Order, together with any evidence accompanying the DIP Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each Prepetition Agent and/or other Prepetition Secured Party is authorized, but shall not be obligated, to file in the Debtors' lead chapter 11 case, Case No. 19-35198 (MI), a single, master proof of claim on behalf of the relevant Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Debt Documents and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors. Upon the filing of a Master Proof of Claim against each of the Debtors, Prepetition Agents and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Debt Documents, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Chapter 11 Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims. The provisions of this paragraph 37 and each

Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Agent.

38.     *Credit Bidding*.  (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the applicable DIP Obligations in any sale of the DIP Collateral, and (b) the applicable Prepetition Secured Parties shall have the right, consistent with the provisions of the Prepetition Debt Documents, to credit bid up to the full amount of their Prepetition Debt in any sale of the Prepetition Collateral,  in each case of (a) and (b), as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

39.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

40.     *Payments Held in Trust*.   Except as expressly permitted in this Final Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to payment in full of all DIP Obligations under the DIP Documents and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders (as applicable based on the specific asset at issue) and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

41.     *Modification of DIP Documents and Budget*.   The DIP Loan Parties are hereby authorized, without further order of this Court, to enter into agreements with the DIP Secured Parties providing for any consensual non-material modifications to the Budget or the DIP Documents, or of any other modifications to the DIP Documents necessary to conform the terms of the DIP Documents to this Final Order, in each case consistent with the amendment provisions of the DIP Document.   Notwithstanding the foregoing, updates and supplements to the Budget required to be delivered by the DIP Loan Parties under the DIP Documents shall not be considered material amendments or modifications to the Budget or the DIP Documents.

42.     *Headings*.   Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

43.     *No Third Party Rights*.   Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

44. *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

45. *Necessary Action*. The Debtors, the DIP Secured Parties and Prepetition Secured Parties are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

46. *Retention of Jurisdiction*. The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

Signed: October 21, 2019

_____
Marvin Isgur
United States Bankruptcy Judge

## Schedule 1

### Budget

**Sheridan Fund II - Initial DIP Budget**

*As of 9/13/2019; in $ thousands*

| | Filing: 9/16 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending ==> | 20-Sep-19 | 27-Sep-19 | 04-Oct-19 | 11-Oct-19 | 18-Oct-19 | 25-Oct-19 | 01-Nov-19 | 08-Nov-19 | 15-Nov-19 | 22-Nov-19 | 29-Nov-19 | 06-Dec-19 | 13-Dec-19 | Total 13-Week |
| Forecast Week ==> | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Forecast |
| Actual / Forecast ==> | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | |
| **Receipts** | | | | | | | | | | | | | | |
| Oil & Gas Receipts | 12,728 | 21 | 276 | - | 11,571 | 18 | 245 | - | - | 12,005 | 455 | - | - | 37,320 |
| JIB Receipts | - | - | 869 | - | - | - | 722 | - | - | - | 840 | - | - | 2,431 |
| Proceeds from Asset Sales | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | **12,728** | **21** | **1,145** | **-** | **11,571** | **18** | **967** | **-** | **-** | **12,005** | **1,295** | **-** | **-** | **39,750** |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Revenue Checks | - | (4,430) | - | - | - | (4,049) | - | - | - | - | (4,206) | - | - | (12,685) |
| Commodity Hedges | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| LOE/Field Expenses | (977) | (1,623) | (830) | (830) | (332) | (332) | (885) | (305) | (305) | (305) | (1,119) | (303) | (303) | (8,450) |
| Production Taxes | - | (77) | - | - | - | - | (515) | - | - | - | (774) | - | - | (1,366) |
| Payroll/Benefits | - | (1,043) | (93) | (540) | (304) | - | (1,136) | - | (1,290) | - | (1,146) | - | (875) | (6,426) |
| Non-Payroll G&A | (284) | (428) | (175) | (175) | (990) | (105) | (280) | (94) | (94) | (94) | (346) | (101) | (101) | (3,268) |
| Misc & Intercompany | (20) | (745) | (745) | (745) | (745) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (20) | (3,161) |
| **Total Operating Disbursements** | **(1,281)** | **(8,346)** | **(1,844)** | **(2,291)** | **(2,371)** | **(4,506)** | **(2,836)** | **(420)** | **(1,710)** | **(420)** | **(7,611)** | **(424)** | **(1,298)** | **(35,357)** |
| | | | | | | | | | | | | | | |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | |
| Capex | (873) | (1,630) | (866) | (866) | (435) | (435) | (745) | (455) | (455) | (455) | (1,235) | (408) | (408) | (9,264) |
| Debt Service | (2,100) | - | (290) | - | - | - | (563) | - | (1,517) | (460) | (706) | - | (1,517) | (3,659) |
| Professional Fees | (664) | - | (537) | (700) | (100) | (400) | (160) | (1,517) | (460) | (1,089) | (520) | (1,517) | (460) | (8,124) |
| **Total Non-Operating Disbursements** | **(3,637)** | **(1,630)** | **(1,693)** | **(1,566)** | **(535)** | **(835)** | **(1,468)** | **(1,972)** | **(915)** | **(1,544)** | **(2,461)** | **(1,925)** | **(868)** | **(21,047)** |
| | | | | | | | | | | | | | | |
| **Net Cash Flow** | **7,810** | **(9,954)** | **(2,392)** | **(3,857)** | **8,665** | **(5,322)** | **(3,337)** | **(2,392)** | **(2,625)** | **10,042** | **(8,777)** | **(2,348)** | **(2,166)** | **(16,653)** |
| | | | | | | | | | | | | | | |
| Beginning Cash Balance | 945 | 36,755 | 26,801 | 24,409 | 20,552 | 29,217 | 23,895 | 42,558 | 40,166 | 37,541 | 47,583 | 38,806 | 36,458 | 945 |
| Net Cash Flow | 7,810 | (9,954) | (2,392) | (3,857) | 8,665 | (5,322) | (3,337) | (2,392) | (2,625) | 10,042 | (8,777) | (2,348) | (2,166) | (16,653) |
| Ending Cash Balance Before DIP Draw | 8,755 | 26,801 | 24,409 | 20,552 | 29,217 | 23,895 | 20,558 | 40,166 | 37,541 | 47,583 | 38,806 | 36,458 | 34,292 | (15,708) |
| DIP Borrowings/Paydowns | 28,000 | - | - | - | - | - | 22,000 | - | - | - | - | - | - | 50,000 |
| Ending Cash Balance | 36,755 | 26,801 | 24,409 | 20,552 | 29,217 | 23,895 | 42,558 | 40,166 | 37,541 | 47,583 | 38,806 | 36,458 | 34,292 | 34,292 |
| Committed Availability | (8,109) | (8,109) | (8,109) | (8,109) | (8,109) | (8,109) | (8,109) | (8,109) | (7,673) | (7,673) | (7,673) | (7,673) | (7,673) | (7,673) |
| **Ending Available Cash Balance** | **28,646** | **18,692** | **16,300** | **12,443** | **21,108** | **15,786** | **34,449** | **32,057** | **29,868** | **39,910** | **31,133** | **28,785** | **26,619** | **26,619** |
| | | | | | | | | | | | | | | |
| **DIP Facility** | | | | | | | | | | | | | | |
| Beginning DIP Loan Balance | - | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 78,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | - |
| Pre-Petition Debt Roll-Up | 50,000 | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 |
| DIP Borrowings/Paydowns | 28,000 | - | - | - | - | - | 22,000 | - | - | - | - | - | - | 50,000 |
| **Ending DIP Loan Balance** | **78,000** | **78,000** | **78,000** | **78,000** | **78,000** | **78,000** | **100,000** | **100,000** | **100,000** | **100,000** | **100,000** | **100,000** | **100,000** | **100,000** |
| New Money Drawn | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 28,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 |
| DIP Total Facility Size | 78,000 | 78,000 | 78,000 | 78,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 |
| **DIP Availability** | **-** | **-** | **-** | **-** | **22,000** | **22,000** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| | | | | | | | | | | | | | | |
| **Total Liquidity** | **28,646** | **18,692** | **16,300** | **12,443** | **43,108** | **37,786** | **34,449** | **32,057** | **29,868** | **39,910** | **31,133** | **28,785** | **26,619** | **26,619** |